**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BROKER GENIUS INC.,<br><br>*Plaintiff,*<br><br>v.<br><br>SEAT SCOUTS LLC and<br>DREW GAINOR<br><br>*Defendants.* | Civil Action No. _____<br><br>**COMPLAINT** |

Plaintiff Broker Genius Inc. ("Broker Genius" or "Plaintiff"), by and through its undersigned counsel, hereby brings this complaint against Defendants Drew Gainor and Seat Scouts LLC (collectively "Defendants") as follows:

## INTRODUCTION

1.      This action is brought to remedy the unlawful conduct of Defendants in the misappropriation, conversion, and retention of Broker Genius' trade secret technology and skills and expenditures, duplication of Broker Genius' copyrighted software, and breach of their contractual obligations.  By reason of Defendants' conduct they have converted and possess Broker Genius' trade secrets and substantial skills and expenditures related to Broker Genius' Auto Pricer software service application Version

1

3 ("Auto Pricer"). To make matters worse, Defendants are making use of, and disclosing, Broker Genius' trade secret technology, substantial skills and expenditures, and copyrighted software to unfairly compete against Broker Genius, to tortuously interfere with Broker Genius' current and prospective business relations, and to unjustly enrich themselves.

2.      Now that Defendants' misconduct has been uncovered (although the full extent of their wrongdoing has yet to be discovered), Broker Genius seeks to hold Defendants accountable, stopping them from further exploiting Broker Genius' trade secret technology, substantial skills and expenditures, and copyrighted software and putting an immediate halt to the substantial and irreparable harm and damages Defendants have caused, and continue to cause, Broker Genius as a result of their unlawful activities.

## THE PARTIES

3.      Broker Genius is a Delaware corporation, with its principal place of business at 181 South Franklin, Suite 307, Valley Stream, New York, 11581.

4.      Upon information and belief, Defendant Drew Gainor ("Gainor") is an individual having a residence at 5706 Belmont Valley Ct., Raleigh, North Carolina 27612.

5.      Upon information and belief, Defendant Seat Scouts LLC ("Seat Scouts") is a Nebraska limited liability company with its principal place of business at 7202 Giles Road, Suite 4 #330, La Vista, Nebraska 68128. Upon information and belief, Defendant Gainor is the owner of "Seat Scouts."

6.      Upon information and belief, Defendant Seat Scouts may be served via its registered agent, Andrew J. Hilger, 5170 Leavenworth St., Omaha, Nebraska 68106.

7.      Upon information and belief, Defendant Gainor is and was the agent of Defendant Seat Scouts and, at all relevant times, acted for his own benefit and for the benefit of, and with the knowledge and consent of Defendant Seat Scouts.

8.      Upon information and belief, Defendant Seat Scouts is and was the alter ego of Defendant Gainor, at all relevant times.  Upon information and belief, Defendant Gainor is and was the moving, active, and conscious force behind Defendant Seat Scouts' wrongful acts alleged herein.

9.      Upon information and belief, Defendants are and were at all relevant times the agents, affiliates, alter egos, partners, assignees, successors-in-interest, or principals of each other or were otherwise responsible for or participated in the performance of the wrongful acts alleged herein, and thereby are jointly and severally responsible for such acts and incurred liability therefore.

## JURISDICTION AND VENUE

10.      This Court has exclusive subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 in that this case arises under various federal statutes, including 18 U.S.C. § 1836 *et seq.*, 17 U.S.C. § 101 *et seq.* The Court has supplemental jurisdiction over Plaintiff's remaining common-law claims under 28 U.S.C. § 1367.

11.      This Court has personal jurisdiction over Defendants because each of them conducts business in New York and because they have jointly and severally committed

3

acts of trade secret misappropriation, copyright infringement and other torts in the State of New York and in this district.  In addition, some of the causes of action asserted by this Complaint arise out of Defendants' breaches of contract, in which Defendants have agreed to submit to the personal jurisdiction of this Court.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events, acts, omissions, and injuries giving rise to the claims occurred in this judicial district and because Defendants are subject to personal jurisdiction in this judicial district at the time this action has commenced.  In addition, some of the causes of action asserted by this Complaint arise out of Defendants' breaches of contract, in which Defendants have agreed that any action arising under the contract would be filed in a federal or state court located within New York County, New York.

**BROKER GENIUS' BUSINESS AND TRADE SECRET TECHNOLOGY**

13.     Broker Genius is a technology company that develops pioneering products and services for the secondary ticket market and industry.

14.     Auto Pricer is a valuable innovative product that Broker Genius CEO, Shmuel "Sam" Sherman, conceived of and developed through the expenditure of much effort and resources over four years.  It is a complex Software-as-a-Service ("SaaS") Dynamic Automated Ticket Pricing Program ("DATP") product specific to the secondary ticket sales market – the like of which never existed before.

15.     Auto Pricer integrates with ticket resellers' various point-of-sale systems and allows them to set certain price rules on their ticket inventories and automatically adjust their pricing in accordance with market conditions.

16.     Broker Genius' Auto Pricer has helped ticket resellers make 33-40% higher returns by lowering operational costs and increasing profits, and has helped clients grow their inventory by up to eightfold, allowing them to scale-up rapidly and efficiently.

17.     Broker Genius has invested substantial labor, skills, and expenditures over the years in developing Auto Pricer and in acquiring and building its relationships with clients based on several indispensable factors, including Auto Pricer's trade secret technology.

18.     Broker Genius' Auto Pricer trade secret technology includes: its unique DATP application architecture; its unique scalability architecture; and its inter-operating components, each of which is closely and confidentially maintained by Broker Genius as a trade secret.

19.     Broker Genius employs dedicated onboarding specialists, technical support specialists, and its sales force to conduct extensive training for its prospective and active clients and to provide close coordinated technical support to its clients using Auto Pricer. During these training and technical support sessions, and only after prospective and active clients agree to strict terms of use (*see infra*), Broker Genius clients learn how to optimize the use of Auto Pricer for their particular business requirements and also learn about Auto Pricer's application architecture, scalability architecture, and inter-operating components.

20.     Broker Genius is the sole owner of its trade secrets technology, which is of great value to Broker Genius and which was developed by expending substantial capital and resources and utilizing substantial skills and expenditures.

21.     Broker Genius' trade secret technology is a secret, as it is not known outside of Broker Genius' business and its clients who agree to strict confidentiality provisions and terms of use.  Broker Genius' trade secret technology is not in the public domain, and Broker Genius has undertaken significant effort, time, expense, and other resources to develop and maintain its confidentiality.

22.     By way of example only, Broker Genius requires all of its employees to sign employment agreements and its employees are instructed to abide by Broker Genius' employee handbook that includes strict confidentiality provisions broadly defining its trade secrets technology and proprietary confidential information and also includes strict non-disclosure, and non-use obligations.

23.     By way of further example, Broker Genius also maintains its encrypted proprietary software computer code in private and protected repositories.

24.     By way of further example, Broker Genius uses independent consultants to continually audit and enhance its network security and the protection of its trade secret technology and proprietary and confidential technology.

25.     By way of further example, prior to demonstrating Auto Pricer on a trial basis subscription, Broker Genius requires prospective clients to agree to Terms of Use ("ToU") that restrict and prohibit unlawful uses of Broker Genius' proprietary products,

services, website, applications, mobile platforms, tools, modules, integrated application sites and remote services, servers, and services residing on servers owned and/or operated by third parties ("Sites, Services, or Apps"). (*See* Exhibit 1 hereto.)

26.     Prospective Broker Genius clients must also agree to the ToU prior to creating a Broker Genius account and accessing/using Auto Pricer.

27.     The Broker Genius ToU, *inter alia*, prohibits prospective and active clients from "deriv[ing] data to determine Broker Genius functionality, user information, aggregate statistics on Broker Genius' performance, or the performance of third party data integration partners."  In addition, prospective and active clients are granted a license to the Broker Genius Products and Services on certain specific conditions, including but not limited to an agreement not to "[m]odify, adapt, sub-license, translate, sell, reverse engineer, decompile or disassemble any portion of the Site or Apps [collectively "Content"] or otherwise attempt to derive any source code or underlying ideas or algorithms of any part of the Site or Apps," not to "[r]eproduce, modify, display, publicly perform, distribute or create derivative works of the Content," and not to "[f]rame or mirror any part of the Site or Apps."  Prospective clients also expressly acknowledge that "[a]ny use of the Site, Apps, or Content by you or anyone acting on your behalf that does not strictly comply with each and every provision in this section exceeds the scope of the license granted to you herein, constitutes unauthorized reproduction, display, or creation of unauthorized derivative versions of the Site, Apps, and Content and infringes our copyrights and other rights in the Site or Apps and Content." (*See* Exhibit 1.)

28.     The Broker Genius ToU also states that clients are "responsible for the confidentiality and use of [their] username and password, and for all activities (including commercial transactions) that are conducted through [their] account." Clients also "may not transfer or sell access to [their] account." (*See* Exhibit 1.)

29.     Broker Genius' trade secret technology cannot be easily duplicated by others and provides Broker Genius with a competitive advantage over other entities that may seek to compete with it. This competitive advantage would be lost if such trade secret technology became known to the public or to Broker Genius' competitors who otherwise would have to invest significant time and expense to develop such technology independently.

## BROKER GENIUS' COPYRIGHTS

30.     Broker Genius is the owner of the original Auto Pricer computer software product including the Auto Pricer user interface, back-end functionality, and underlying computer code.

31.     Auto Pricer has been registered with the U.S. Copyright Office under a certificate bearing the registration number TX0008308347.

32.     Broker Genius is the rightful and exclusive owner of the copyright bearing registration number TX0008308347.

## DEFENDANTS' MISCONDUCT

33.     Upon information and belief, on or about May 26, 2016, Defendant Gainor signed up and created an account with Broker Genius to use Auto Pricer.  At the time that Defendant Gainor created this account, he agreed to Broker Genius' ToU, including the conditional license therein.

34.     Upon information and belief, on or about July 7, 2016, Defendant Gainor accepted Broker Genius' updated ToU, including the conditional license therein.

35.     The ToU constituted a contractual agreement between Defendant Gainor and Broker Genius in which, among other things, Defendant Gainor agreed not to reverse engineer, decompile or disassemble any portion of Broker Genius' products and services or otherwise attempt to derive any source code or underlying ideas or algorithms of any part of Auto Pricer and not to reproduce, distribute or create derivative works of Auto Pricer. (*See* Exhibit 1.)

36.     Defendant Gainor received extensive and personalized training and technical support from Broker Genius, including training videos and demonstrations, regarding optimal use of Auto Pricer and Auto Pricer's proprietary application architecture, scalability architecture, and inter-operating components.

37.     Upon information and belief, on August 30, 2016, Defendant Gainor registered a domain under the name 'Seat Scouts.'  *See* http://seatscouts.com/.

38.     Upon information and belief, on or about March 1, 2017, Defendant Gainor registered Seat Scouts with the State of Nebraska.

39.    On or about October 20, 2017 Defendant Gainor, using the alias "drewgainor," posted a message on the Shows On Sale forum advertising "the most thoughtful pricing tool that will finally help to save markets" ("Command Center Product") and seeking viewers for a November 1, 2017 live webinar demonstrating the Command Center Product.

40.    On October 31, 2017, Defendant Gainor, using the alias "drewgainor," posted a message on the Shows On Sale forum: "Pricing inventory has never been so simple!" advertising a November 1, 2017 live webinar demonstrating the Command Center Product.

41.    Upon information and belief, Defendants own and operate the seatscouts.com website and the Command Center Product and are the main beneficiaries thereof.

42.    On or about October 20, 2017 Broker Genius discovered the seatscouts.com website and the Command Center product.

43.    Upon information and belief, Seat Scouts is currently offering free trial of and signing up clients to use the Command Center product on https://seatscouts.com/command-center/.

44.    On November 1, 2017, Broker Genius viewed a 50-minute, live webinar of the Command Center Product.  Broker Genius immediately recognized that the user interface, user experience and workflow, architecture, and component interoperability of the Command Center Product were substantially the same and in some cases virtually identical to and derived from Auto Pricer.

45.     Upon information and belief, since October 20, 2017, Broker Genius has lost at least two clients to Seat Scouts' Command Center product.

46.     Upon information and belief, Defendants, without authorization, reverse-engineered, decompiled and disassembled Broker Genius' Auto Pricer Product and user interface to derive Auto Pricer's underlying structure, algorithms, and component interoperability in violation of the ToU.

47.     Upon information and belief, Defendants, without authorization, have misappropriated Broker Genius' trade secrets technology, skills, and expenditures to design their infringing and unlawful Command Center Product and to unfairly compete with Broker Genius.

48.     Upon information and belief, Defendants are jointly and severally responsible for the actions and omissions alleged herein and are the proximate cause of the injuries that Broker Genius has suffered.

49.     Upon information and belief, the actions and omissions alleged herein to have been undertaken by the Defendants were undertaken collectively and/or individually by each of the Defendants, were actions and omissions that each Defendant authorized, controlled, directed, or had the ability to authorize, control or direct, and/or were actions and omissions that Defendants collectively and/or individually assisted, participated in, or otherwise encouraged, and are actions and omissions for which each Defendant is liable. Each Defendant aided and abetted the actions of the Defendants set forth herein, in that each Defendant had partial or full knowledge of those actions and omissions, provided assistance and benefitted from those actions and omissions, in whole or in part. Each of

the Defendants was the alter ego and/or the agent of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting as the alter ego and/or within the course and scope of such agency and with permission, consent, and under the control of other Defendants.

### FIRST CAUSE OF ACTION
### Trade Secret Misappropriation Under the Defend Trade Secrets Act
### (18 U.S.C. § 1836 *et seq.*)

50.     Broker Genius realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 49 above.

51.     Broker Genius owns and possesses the trade secret technology as alleged above that relate to Broker Genius' business.

52.     Broker Genius' trade secret technology relates to products and services used, sold, shipped, and ordered in, or intended to be used, sold, shipped and/or ordered in interstate or foreign commerce.

53.     Broker Genius has taken reasonable measures to protect the secrecy of its trade secret technology, including the secrecy of the Broker Genius trade secret technology Defendants have misappropriated.

54.     Defendants have, by the improper and unlawful means alleged above, acquired Broker Genius' trade secrets technology.

55.     At the time that Broker Genius' trade secrets technology was disclosed to Defendants, Defendants knew or had reason to know that the trade secret technology was

acquired through improper and unlawful means, under circumstances giving rise to a duty to maintain the secrecy of Broker Genius' trade secret technology.

56.     As a direct and proximate result of Defendants' conduct, Broker Genius has suffered and continues to suffer the disruption of its business relationships and the loss of clients and potential clients, dilution of good will, injury to its reputation, misappropriation of its trade secrets, and devaluation of its trade secrets and business.

57.     Defendants' misappropriation of Broker Genius' trade secret technology has caused and will continue to cause Broker Genius substantial injury, including, but not limited to actual damages, lost profits, harm to its reputation, and the diminution in value of its trade secrets and business.  Defendants have been unjustly enriched by their misappropriation of Broker Genius' trade secrets.

58.     Defendants' misappropriation of Broker Genius' trade secret technology was intentional, knowing, willful, malicious, fraudulent, and oppressive.  Broker Genius is entitled to an award of exemplary damages and reasonable attorneys' fees.

59.     Because Broker Genius' remedy at law is inadequate, Broker Genius seeks – in addition to damages – a temporary, preliminary, and permanent injunctive relief to protect its trade secret technology as well as Broker Genius' legitimate business interests. Broker Genius will continue to suffer irreparable harm absent injunctive relief.

**SECOND CAUSE OF ACTION**
**Copyright Infringement**
**17 U.S.C. § 101 et seq.**

60.     Broker Genius realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 49 above.

61.     Broker Genius' proprietary Auto Pricer is a work of original creative expression fixed in software programming. Broker Genius is the rightful and exclusive owner of this copyrighted material and is empowered to enforce the rights inherent in its copyrights. Broker Genius has registered its copyrighted Auto Pricer with the United States Copyright Office under a certificate bearing the registration number TX0008308347.

62.     As alleged above, Defendants, without Broker Genius' authorization or consent, and in express violation of the limitations on the access to which Defendants had any right of access, have reproduced and copied, caused to be reproduced and copied, used, and/or prepared derivative works of Broker Genius' copyrighted material. In particular, Defendants have copied and made unauthorized use of Broker Genius' copyrighted Auto Pricer to create the user interface of the Command Center Product.

63.     Defendants' conduct constitutes direct and intentional infringement of Broker Genius' exclusive rights under the Copyright Act to control the reproduction, publication, and use and display of Auto Pricer.

64.     Defendants' conduct constitutes repeated infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*

65.     As a direct and proximate result of Defendants' conduct, Broker Genius has suffered and continues to suffer the disruption of its business relationships and the loss of

clients and potential clients, dilution of good will, injury to its reputation, infringement of its copyrights, and devaluation of its copyrights and business.

66.     Defendants' infringement has caused and will continue to cause Broker Genius substantial injury, including, but not limited to statutory damages, actual damages, lost profits, harm to its reputation, and the diminution in value of its copyrights and business. Defendants have been unjustly enriched by their infringement.

67.     Defendants' infringement was intentional, knowing, willful, malicious, fraudulent, and oppressive. Broker Genius is entitled to an award of exemplary damages and reasonable attorneys' fees.

### THIRD CAUSE OF ACTION
#### Breach of Contract
#### (as to Defendant Gainor)

68.     Broker Genius realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 49 above.

69.     The ToU is a binding contract between Broker Genius and Defendant Gainor.

70.     By his conduct as alleged above, Defendant has breached at least the Code of Conduct and Conditional License provisions of the ToU.  In particular, Defendant has breached his obligations, *inter alia*, to access Broker Genius' technology only for permitted purposes and to refrain from, *inter alia*, reverse engineering, decompiling, or disassembling Auto Pricer and Broker Genius' trade secret technology, from attempting to derive any source code or underlying ideas or algorithms of Auto Pricer and Broker Genius' trade secret technology, from reproducing, modifying, displaying, publicly

performing, distributing or creating derivative works of Auto Pricer and Broker Genius' trade secret technology, and from framing or mirroring any part of Auto Pricer and Broker Genius' trade secret technology.

71.     Broker Genius has satisfied all conditions precedent to bringing this action.

72.     As a direct and proximate result of Defendant's conduct, Broker Genius has suffered and continues to suffer the disruption of its business relationships and the loss of clients and potential clients, dilution of good will, injury to its reputation, and devaluation of its business.

73.     Defendant's breach of contract has caused and will continue to cause Broker Genius substantial injury, including, but not limited to actual damages, lost profits, harm to its reputation, and the diminution in value of its business. Defendant has been unjustly enriched by their actions.

74.     Defendant's breach of contract was intentional, knowing, willful, malicious, fraudulent, and oppressive. Broker Genius is entitled to an award of exemplary damages and reasonable attorneys' fees.

**FOURTH CAUSE OF ACTION**
**Misappropriation of Trade Secrets Under New York Law**

75.     Broker Genius realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 49 above.

76.     The rights and interests of Broker Genius in its trade secret technology, described above, constitute trade secrets as defined by the common law of the State of New York.

77.     Broker Genius owns all of the rights, title and interest in and to the trade secrets that Defendants used and continue to use in operating the seatscouts.com website and Command Center Product.

78.     Because of Broker Genius' reliance on the confidentiality provisions in the Terms of Use (ToU) agreement with Defendants' Gainor and Seat Scouts, Broker Genius provided Defendants with access to and knowledge of Broker Genius' trade secret technology.

79.     Such trade secrets were and are primary assets of Broker Genius and have actual and potential independent economic value for Broker Genius.  Broker Genius has carefully guarded its trade secret technology and has taken reasonable steps to maintain its secrecy.  There has been no disclosure of the trade secret technology by Broker Genius.

80.     Defendants had knowledge of their legal obligation and duty, by virtue of the ToU, to preserve the confidentiality of Broker Genius' trade secret technology and to limit their use of such trade secret technology.

81.     Upon information and belief, Defendants' Gainor and Seat Scouts knowingly, willfully and maliciously violated the ToU and breached Broker Genius' confidence by misappropriating Broker Genius' trade secret technology in order to develop, manufacture, produce and market competing products and services, including the seatscouts.com website and Command Center Product.

82.     As a direct and proximate result of Defendants' conduct, Broker Genius has suffered and continues to suffer the disruption of its business relationships and the loss of clients and potential clients, dilution of good will, injury to its reputation, misappropriation of its trade secrets, and devaluation of its trade secrets and business.

83.     Defendants' misappropriation of Broker Genius' trade secret technology has caused and will continue to cause Broker Genius substantial injury, including, but not limited to actual damages, lost profits, harm to its reputation, and the diminution in value of its trade secrets and business.  Defendants have been unjustly enriched by their misappropriation of Broker Genius' trade secret technology.

84.     Defendants' misappropriation of Broker Genius' trade secret technology was intentional, knowing, willful, malicious, fraudulent, and oppressive.  Broker Genius is entitled to an award of exemplary damages and reasonable attorneys' fees.

85.     Because Broker Genius' remedy at law is inadequate, Broker Genius seeks – in addition to damages – a temporary, preliminary, and permanent injunctive relief to protect its trade secret technology as well as Broker Genius' legitimate business interests. Broker Genius will continue to suffer irreparable harm absent injunctive relief.

## FIFTH CAUSE OF ACTION
### Unfair Competition Under New York Law
### Misappropriation of Skills and Expenditures

86.     Broker Genius realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 49 above.

18

87.     Broker Genius has invested substantial labor, skill, and expenditures in developing its valuable property rights and benefits in Auto Pricer, its trade secret technology, and its copyrighted material.

88.     Defendants misappropriated Broker Genius' substantial labor, skill, and expenditure in bad faith by, *inter alia*, intentionally, knowingly, willfully, and maliciously violating their contractual obligations and using and disclosing Broker Genius' valuable property rights and benefits in Auto Pricer for their own commercial advantage.

89.     As a direct and proximate result of Defendants' conduct, Broker Genius has suffered and continues to suffer the disruption of its business relationships and the loss of clients and potential clients, dilution of good will, injury to its reputation, misappropriation of its skills and expenditures, and devaluation of its valuable property rights, benefits, and business.

90.     Defendants' misappropriation of Broker Genius' substantial skills and expenditures has caused and will continue to cause Broker Genius substantial injury, including, but not limited to actual damages, lost profits, harm to its reputation, and the diminution in value of its valuable property rights and benefits.  Defendants have been unjustly enriched by their misappropriation of Broker Genius' substantial skills and expenditures.

91.     Defendants' misappropriation of Broker Genius substantial skills and expenditures was intentional, knowing, willful, malicious, fraudulent, and oppressive.

Broker Genius is entitled to an award of exemplary damages and reasonable attorneys' fees.

92.     Because Broker Genius' remedy at law is inadequate, Broker Genius seeks – in addition to damages – a temporary, preliminary, and permanent injunctive relief to protect its substantial skills and expenditures and valuable property rights and benefits as well as Broker Genius' legitimate business interests. Broker Genius will continue to suffer irreparable harm absent injunctive relief.

## SIXTH CAUSE OF ACTION
### Conversion under New York Law

93.     Broker Genius realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 49 above.

94.     By the above-alleged acts, Defendants, without authorization, assumed and exercised an unlawful right of ownership over Broker Genius' trade secret technology and substantial skill and expenditures to the exclusion of Broker Genius' rights therein.

95.     The unlawful and improper acts of Defendants, as alleged above, also denied and violated Broker Genius' dominion, rights, and possession over its trade secret technology and substantial skill and expenditures, and excluded Broker Genius from exercising its rights therein.

96.     As a direct and proximate result of Defendants' conduct, Broker Genius has suffered and continues to suffer the disruption of its business relationships and the loss of clients and potential clients, dilution of good will, injury to its reputation,

misappropriation of its trade secret technology, skills and expenditures, and devaluation of its valuable property rights, benefits, and business.

97.     Defendants' conduct has caused and will continue to cause Broker Genius substantial injury, including, but not limited to actual damages, lost profits, harm to its reputation, and the diminution in value of its valuable property rights and benefits. Defendants have been unjustly enriched by their misappropriation of Broker Genius' trade secret technology and substantial skills and expenditures.

98.     Defendants' conduct was intentional, knowing, willful, malicious, fraudulent, and oppressive.  Broker Genius is entitled to an award of exemplary damages and reasonable attorneys' fees.

99.     Because Broker Genius' remedy at law is inadequate, Broker Genius seeks – in addition to damages – a temporary, preliminary, and permanent injunctive relief to return its trade secret technology and substantial skills and expenditures to its dominion and possession.  Broker Genius will continue to suffer irreparable harm absent injunctive relief.

## SEVENTH CAUSE OF ACTION
## Tortious Interference with Business Relationships Under New York Law

100.    Broker Genius realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 49 above.

101.    By the above-alleged acts, Defendants have interfered and continue to interfere with Broker Genius' existing and prospective business relationships with clients and prospective clients.

102.    Upon information and belief, Defendants, with full knowledge of Broker Genius' business relationships, intentionally interfered and continue to interfere with those relationships by, *inter alia*, operating the competing the seatscouts.com website and offering the Command Center Product to Broker Genius clients, using Broker Genius' trade secret technology to develop their Command Center Product, infringing Broker Genius' copyrights, and by directly targeting and soliciting ticket brokers in the secondary ticket resale market including current and prospective Broker Genius clients via, at least, the Shows On Sale industry forum.

103.    Upon information and belief, the unlawful and improper acts of Defendants, as alleged above, also prevented and continue to prevent third parties from entering into business relationships with Broker Genius.

104.    Upon information and belief, Defendants' conduct was motivated solely by malice and/or to inflict injury on Broker Genius by unlawful means.

105.    As a direct and proximate result of Defendants' conduct, Defendants have and continue to injure Broker Genius by denying business to and diverting business from Broker Genius, which Broker Genius would have otherwise had and from which it would have derived substantial profits.

106.    Upon information and belief, by their acts alleged above, Defendants have made and will make substantial profits and gains to which they are not in law or equity entitled.

107.    Upon information and belief, Defendants' tortious interference with Broker Genius' business relationships has caused and will continue to cause Broker Genius substantial injury, including, but not limited to actual damages, lost profits, harm to its reputation, and the diminution in value of its business.  Defendants have been unjustly enriched by their unlawful conduct.

108.    Upon information and belief, Defendants' tortious interference with Broker Genius' business relationships was intentional, knowing, willful, malicious, fraudulent, and oppressive.  Broker Genius is entitled to an award of exemplary damages and reasonable attorneys' fees.

109.    Upon information and belief, Defendants intend to continue to interfere with Broker Genius' business existing and prospective business relationships unless restrained and enjoined by this Court.

## EIGHTH CAUSE OF ACTION
### Unjust Enrichment under New York Law

110.    Broker Genius realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 49 above.

111.    Upon information and belief, by the unlawful conduct alleged above, Defendants have been unjustly enriched to the detriment of Broker Genius' business expectancies.

112.    Upon information and belief, Defendants have unlawfully taken and retained from Broker Genius the value of its trade secret technology, copyrights, substantial skills and expenditures, and existing and prospective business relationships without just compensation to Broker Genius.

113.    Upon information and belief, by the above-alleged acts, Defendants have made and will make substantial profits and gains to which they are not in law or equity entitled.

114.    As a direct and proximate result of Defendants' above-alleged acts, Broker Genius has suffered irreparable harm and damage and is suffering monetary damages in an amount to be determined at trial.

115.    The circumstances surrounding Defendants' acts are such that equity and good conscience require Defendants to make full restitution to Broker Genius for their unjust enrichment.

116.    Defendants' conduct, as-alleged above, was intentional, knowing, willful, malicious, fraudulent, and oppressive. Broker Genius is entitled to an award of exemplary damages and reasonable attorneys' fees.

## NINTH CAUSE OF ACTION
### Breach of the Implied Duty of
### Good Faith and Fair Dealing Under New York Law
### (as to Defendant Gainor)

117.    Broker Genius realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 49 above.

118.    The ToU agreement between Broker Genius and Defendant Gainor imposes an obligation of good faith and fair dealing on Defendant.

119.    Defendant Gainor owed Broker Genius a duty to deal fairly and in good faith, including but not limited to, a duty to refrain from reducing the goodwill of Broker Genius, to maintain the secrecy and refrain from misappropriating and unlawfully using and disclosing Broker Genius' trade secret technology and infringing its copyrights, and to avoid from tortuously interfering with Broker Genius' business relationships.

120.    Upon information and belief, by the acts described above, Defendant Gainor breached these duties by, *inter alia*, misappropriating and unlawfully using and disclosing Broker Genius' trade secret technology and substantial skills and expenditures, and infringing its copyrights to develop, market and sell competing products and services and to solicit existing and prospective clients away from Broker Genius.

121.    As a direct and proximate result of Defendant's breaches, Broker Genius was deprived of the benefits of the ToU.

122.    Defendant's conduct, as alleged-above, has caused and will continue to cause Broker Genius substantial injury, including, but not limited to actual damages, lost profits, harm to its reputation, and the diminution in value of its business.

123.    Upon information and belief, Defendant's conduct, as-alleged above, was intentional, knowing, willful, malicious, fraudulent, and oppressive. Broker Genius is entitled to an award of exemplary damages and reasonable attorneys' fees.

124.     Upon information and belief, Defendant intends to continue his conduct unless restrained and enjoined by this Court.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable by right.

## DEMAND FOR RELIEF

Plaintiff requests that the Court find in its favor and against Defendants, and that the Court grant Plaintiff the following relief:

a.     Awarding damages as described in each of the above claims, in favor of Plaintiff and against Defendants in amounts to be determined at trial;

b.     Granting a temporary restraining order, and preliminary and permanent injunction against Defendants, enjoining them from violating their legal and contractual duties to Plaintiff, from accessing, using or disclosing Plaintiff's trade secret technology and from any further infringement of Plaintiff's copyrights;

c.     Awarding punitive damages in favor of Plaintiff and against Defendants in an amount to be determined at trial;

d.     Awarding Plaintiff pre-judgment and post-judgment interest, and its attorneys' fees, costs and other expenses incurred in this action; and

e.     Granting Plaintiff such other and further relief as the Court may deem just and proper under the circumstances.

RESPECTFULLY SUBMITTED,

Veronica Mullally Muñoz (MM-9985)
Daniel J. Melman (DM-8239)
PEARL COHEN ZEDEK LATZER BARATZ LLP
1500 Broadway, 12th Floor
New York, NY 10036
(646) 878-0800
VMunoz@PearlCohen.com
DMelman@PearlCohen.com

*Attorneys for Plaintiff*
    *Broker Genius Inc.*