UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BROKER GENIUS, INC.

       Plaintiff,

  -against-

SEAT SCOUTS LLC and DREW GAINOR

       Defendants.

---

17-cv-8627 (SHS)

<u>OPINION & ORDER</u>

SIDNEY H. STEIN, U.S. District Judge.

  Plaintiff Broker Genius, Inc., is a technology company serving ticket brokers on the secondary ticket market. Its product, AutoPricer v.3 ("AutoPricer"), is a web application that enables secondary-market ticket brokers to dynamically and automatically price their inventory of tickets. Through contractual Terms of Use, Broker Genius grants its customers a conditional license to use AutoPricer. Defendant Drew Gainor, a former Broker Genius customer, is the cofounder of defendant Seat Scouts LLC, whose Command Center product competes with AutoPricer for the business of ticket brokers. Broker Genius has now sued Gainor, Seat Scouts, and others alleging that Gainor improperly used the knowledge and information he gained while he was a Broker Genius customer to develop Command Center.

  Defendants now move to dismiss all claims against all defendants other than Broker Genius's breach of contract claim against Gainor. For the reasons that follow, that motion is granted in part and denied in part.

**I. BACKGROUND & PROCEDURAL HISTORY[1]**

  Broker Genius, a Delaware corporation, is a technology company whose AutoPricer product assists ticket brokers on the secondary market in pricing

---

[1] For the purposes of this motion to dismiss, the Court accepts all facts alleged in the SAC as true and draws all reasonable inferences in Broker Genius's favor. *See Wilson v. Merrill*

and selling their inventory of tickets.  (Second Amended Complaint ("SAC") ¶¶ 3, 23-25, ECF No. 108.)  The Court has previously described AutoPricer in tortuous detail in its Opinion granting Broker Genius's motion for a preliminary injunction, *see Broker Genius, Inc. v. Volpone et al.*, No. 17-Cv-8627, 2018 WL 2175552 (S.D.N.Y. May 11, 2018), as well as in its Opinion denying a preliminary injunction in the related case of *Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495 (S.D.N.Y. 2017).

Defendant Drew Gainor ("Gainor") is a former customer of Broker Genius.  (SAC ¶ 36.)  He is now the cofounder and CEO of defendant Seat Scouts LLC, which offers a product called Command Center that is substantially the same as Broker Genius's AutoPricer.  (SAC ¶ 49-50.)  Seat Scouts LLC is registered in Nebraska (SAC ¶ 12), and its members – the "Seat Scouts Owners" – are also named as defendants in this action.[2]  Gainor was also employed by[3] defendant Event Ticket Sales LLC, which is owned by defendant Guinio Volpone ("Volpone") and registered in Nebraska.  (SAC ¶¶ 14, 39.)

On May 26, 2016, when Gainor signed up as a Broker Genius customer, he assented to Broker Genius's Terms of Use.  (SAC ¶ 36.)  The Terms of Use grant users a conditional license to use AutoPricer in exchange for, among other things, a promise not to "[r]eproduce, modify, display, publicly perform, distribute or create derivative works of [AutoPricer]."  (Terms of Use, SAC Ex. 1.)  Gainor accepted the Terms of Use a second time, on July 7, 2016, when they were updated.  (SAC ¶ 37.)  While a customer, Gainor

---

*Lynch & Co., Inc.*, 671 F.3d 120, 128 (2d Cir. 2011); *Fernandez v. UBS AG*, 222 F. Supp. 3d 358, 369-70 (S.D.N.Y. 2016).

[2] Defendants Gainor Software LLC and Volpone Software LLC are fifty percent co-owners of Seat Scouts; defendants Drew Gainor and Stuart Gainor are fifty percent co-owners of defendant Gainor Software LLC, registered in North Carolina; and defendants Guinio Volpone and Ray Volpone are fifty percent co-owners of defendant Volpone Software LLC, registered in Nebraska.  (SAC ¶¶ 8, 10, 12.)

[3] Gainor's relationship with Event Ticket Sales is not alleged in the SAC, but the allegation that he is an employee was undisputed in the context of Broker Genius's motion for a preliminary injunction.  *See Volpone*, 2018 WL 2175552, at *4.

communicated with Broker Genius using his email address associated with Event Ticket Sales: drew@eventticketsales.info. (SAC ¶ 39.)

During or after Gainor's time as a Broker Genius customer, he improperly used the knowledge he gained from using AutoPricer to develop the Command Center product. (SAC ¶¶ 51-52.) Gainor began marketing Command Center to ticket brokers as early as October 20, 2017. (SAC ¶¶ 44, 48.) Since the time Command Center entered the market, Broker Genius has lost at least two customers to defendants. (SAC ¶ 50.)

Broker Genius initiated this action on November 7, 2017, asserting both federal and state claims for relief. However, Broker Genius subsequently withdrew its two federal claims – for copyright and trade secret infringement – prior to filing the SAC. (Stipulation, Feb. 20, 2018, ECF No. 109.) *See also Zalta*, 280 F.Supp.3d 495 (AutoPricer did not benefit from trade secret protection). The Court retains supplemental jurisdiction over the gallimaufry of state law claims here. *See* 28 U.S.C. § 1367(a), (c)(3). Those claims are as follows: (1) breach of contract (as to defendants Gainor, Volpone, and Event Ticket Sales); (2) unfair competition; (3) conversion; (4) tortious interference with business relationships; (5) unjust enrichment; and (6) breach of the implied covenant of good faith and fair dealing (as to defendants Gainor, Volpone, and Event Ticket Sales). (SAC ¶¶ 55-100.) Broker Genius seeks injunctive relief, as well as compensatory damages, punitive damages, attorneys' fees, costs, and interest. (SAC ¶¶ a-e.)

On November 9, 2017, the Court issued a temporary restraining order at the conclusion of a hearing in which all counsel participated. (Order to Show Cause for Prelim. Inj. and TRO, Nov. 9, 2017, ECF No. 8.) The TRO did not specifically enjoin defendants from marketing or selling their product, but it did enjoin them from violating the Terms of Use. (*Id.* at 2-3.)

On May 11, 2018, the Court granted Broker Genius's request for a preliminary injunction following a five-day hearing at which the Court heard witnesses and documentary evidence was presented. *Volpone*, 2018 WL 2175552. The Court found that Broker Genius was likely to succeed on its breach of contract claim and enjoined defendants from marketing Command Center or making it available for use.

While the preliminary injunction motion was pending before the Court, defendants moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the claims other than the breach of contract claim as against Gainor, and to dismiss Broker Genius's request for attorneys' fees and punitive damages as a form of relief.

**II. DISCUSSION**

In evaluating a motion to dismiss a complaint brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts the truth of the facts alleged in the complaint and draws all reasonable inferences in the plaintiff's favor. *Wilson v. Merrill Lynch & Co., Inc. et al.*, 671 F.3d 120, 128 (2d Cir. 2011). In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be dismissed pursuant to Rule 12(b)(6) where the claims have not been "nudged . . . across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

With one exception, the parties rely on New York substantive law to describe the state law issues raised in this motion; that is sufficient to establish choice of law. *See Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000). With respect to the veil-piercing issue, the Court will undertake a choice-of-law analysis.

**A. Breach of Contract**

Broker Genius's breach of contract claim is asserted against Gainor, Volpone, and Event Ticket Sales. Plaintiff alleges that Gainor assented to the contract – the Terms of Use – on his own behalf as well as on behalf of Volpone and Event Ticket Sales. According to Broker Genius, Gainor had apparent authority to bind Volpone and Event Ticket Sales to the contract.

For the purposes of this motion, defendants concede that Gainor assented to the Terms of Use, but argue that the factual allegations in the SAC

4

do not plausibly suggest that he had authority to bind Volpone and Event Ticket Sales to the contract.

A third party's reasonable belief that someone was acting on behalf of a principal will bind that principal, if the actor had apparent authority to enter the transaction. However,

> [i]f a third party believes that an actor represents no one else's interests, the third party does not have a reasonable belief in the actor's power to affect anyone else's legal position. If the third party is in doubt about whether the actor represents only the actor's own interests, the third party does not have a basis reasonably to believe that the actor has the power to affect anyone else's legal position.

Restatement (Third) Of Agency § 2.03 cmt. f (2006). An actor has apparent authority to enter a transaction where "words or conduct of the principal, communicated to a third party, . . . give rise to the appearance and belief that the agent possesses authority to enter into a transaction." *Hallock v. State*, 64 N.Y.2d 224, 231 (1984); *see F.D.I.C. v. Providence Coll.*, 115 F.3d 136, 140 (2d Cir. 1997) (quoting *Hallock*, 64 N.Y.2d at 231).

Here, Broker Genius contends that Gainor's use of an email address associated with Event Ticket Sales "g[a]ve rise to the appearance and belief that [Gainor] possesse[d] authority to enter into a transaction" on behalf of Volpone and Event Ticket Sales.[4] *Hallock*, 64 N.Y.2d at 231.

That argument is unavailing, because the well-pleaded facts cannot support an inference that Broker Genius reasonably believed that Gainor was transacting on behalf of a principal in the first place, whether or not he had any authority to do so.[5]

---

[4] The Court notes that Gainor used his *personal* email address – not his Event Ticket Sales email address – in the majority of emails admitted as evidence during the preliminary injunction hearing.

[5] The case cited by Broker Genius in its opposition is not to the contrary. In *Danders & More v. Nova Capital Partners, LLC*, a New York Supreme Court justice found that

5

According to the SAC, it was *Gainor* who signed up for Broker Genius, created a Broker Genius account, and assented to the Terms of Use, and there are no facts to support the conclusory assertion that he also did so "on behalf of . . . Volpone and Event Ticket Sales." (SAC ¶¶ 36-37.) Indeed, other than the email address, there are no facts suggesting that the names "Event Ticket Sales" or "Volpone" came up at any point in Gainor's customer registration process, or at any time while he was a Broker Genius customer. Although Gainor's use of his workplace email address may arguably have created some "doubt about whether [he] represent[ed] only [his] own interests," that would not be sufficient for Broker Genius to form a reasonable belief that Gainor was acting to bind Event Ticket Sales and Volpone. *See* Restatement (Third) Of Agency § 2.03 cmt. f (2006). The conclusion that Broker Genius lacked a reasonable belief that it was contracting with Volpone and Event Ticket Sales is bolstered by the fact that the complaint in this action did not initially name those parties at all. (ECF No. 1.)[6]

Because it is not plausible, based on the facts alleged in the SAC, that Broker Genius reasonably believed that Gainor, in assenting to the Terms of

---

apparent authority was plausibly alleged based on an actor's title and use of his workplace email address. *Danders & More v. Nova Capital Partners, LLC*, No. 110628/2010, 2013 N.Y. Misc. LEXIS 280 (N.Y. Sup. Ct. Jan. 14, 2013). However, in that case, the actor "purported[]" to execute the contract "on behalf of" his employer. *Id*. at *1.

[6] Broker Genius briefly adverts in the alternative to the argument that Gainor had *actual* authority to bind Event Ticket Sales and Volpone because "Guinio Volpone knew that Gainor was selling his event tickets using Broker Genius' technology." (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss at 9, ECF No. 115.) Among other fatal flaws in this argument, it is based upon a factual allegation that does not appear in the SAC. *See Friedl v. City of New York et al.*, 210 F.3d 79, 83-84 (2d Cir. 2000) ("[A] district court errs when it . . . relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss." (citations omitted)).

Similarly, to the extent Broker Genius advances an alter ego theory in its breach of contract claim against Event Ticket Sales and Volpone, it cannot succeed. The SAC contains one non-conclusory factual allegation relevant to the alter ego issue: that Volpone is the owner of Event Ticket Sales. (SAC ¶ 14.) That is clearly insufficient under Nebraska law – which governs the veil piercing issue – for the Court to disregard the separate entity of Event Ticket Sales LLC. *See Christian v. Smith*, 759 N.W.2d 447, 462 (Neb. 2008); *see also infra* § II.B.

Use, was doing so on behalf of Volpone and Event Ticket Sales, the SAC fails to state a breach of contract claim against those two defendants. Accordingly, defendants' motion is granted to the extent it seeks to dismiss the breach of contract claim as against Volpone and Event Ticket Sales.

### B. Unfair Competition–Misappropriation

"A plaintiff claiming unfair competition under New York law must show that the defendant acted in bad faith." *Empresa Cubana del Tabaco v. Culbro Corp. et al.*, 399 F.3d 462, 485 (2d Cir. 2005).

Bad faith can be established by a showing of "fraud or deception, or an abuse of a fiduciary or confidential relationship." *Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 197 (2d Cir. 2001) (quoting *Katz Dochrermann & Epstein, Inc. v. Home Box Office*, No. 97-Cv-7763, 1999 WL 179603, at *4 (S.D.N.Y. Mar. 31, 1999)). Bad faith can include signing up for a competitor's service under false pretenses to gain access to information that is the parties' "stock in trade," and incorporating that information into a competitive product, thereby "'free r[iding]' on the [competitor's] significant effort." *Reed Constr. Data Inc. v. McGraw-Hill Cos., Inc. et al.*, 49 F. Supp. 3d 385, 430 (S.D.N.Y. 2014) (quoting *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 845 (2d Cir. 1997)), *aff'd*, 638 F. App'x 43 (2d Cir. 2016).

The SAC clearly pleads "deception" on the part of Gainor and Seat Scouts. *Telecom Int'l*, 280 F.3d at 197. Contrary to defendants' assertion that they were engaged in "simple competition," the facts alleged in the SAC, taken as true, support the inference that Gainor signed up for Broker Genius under false pretenses to gain information about AutoPricer and incorporated what he learned into Seat Scouts's competitive Command Center product. *See Reed Constr. Data*, 49 F. Supp. 3d at 430.

Accordingly, defendants' motion is denied to the extent it seeks to dismiss the unfair competition claim as against Gainor and Seat Scouts.

However, the SAC does not state an unfair competition claim with respect to Event Ticket Sales and its owner, Volpone. Event Ticket Sales and Volpone were simply not parties to the Terms of Use and the SAC does not allege that Event Ticket Sales was ever in competition with Broker Genius to

7

begin with – a clear predicate to a claim of unfair competition. Accordingly, defendants' motion is granted to the extent it seeks to dismiss the unfair competition claim as against Event Ticket Sales and Volpone.

With respect to the Seat Scouts Owners other than Gainor – Gainor Software LLC, Volpone Software LLC, Stuart Gainor, Guinio Volpone, and Ray Volpone – their liability is premised on an alter ego theory, that is, that the Court should disregard Seat Scouts' existence as a limited liability company. Needless to say, the parties disagree about whether the SAC makes sufficient allegations to support such a theory.

Because the parties' briefing raises choice-of-law issues with respect to veil piercing, the Court will undertake a choice-of-law analysis on that issue.

> "Where jurisdiction is based on the existence of a federal question we have not hesitated to apply a federal common law choice of law analysis." *Barkanic v. Gen. Admin. of Civil Aviation of the People's Republic of China*, 923 F.2d 957, 961 (2d Cir. 1991). "The federal common law choice-of-law rule is to apply the law of the jurisdiction having the greatest interest in the litigation." *In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 350 (2d Cir. 1992). . . . "When conducting a federal common law choice-of-law analysis, absent guidance from Congress, we may consult the Restatement (Second) of Conflict of Laws." *Eli Lilly Do Brasil, Ltda v. Fed. Express Corp.*, 502 F.3d 78, 81 (2d Cir. 2007).

*Lola v. Skadden, Arps, Slate, Meagher & Flom LLP et al.*, 620 F. App'x 37, 42 (2d Cir. 2015) (alterations omitted). According to the Restatement, "[t]he local law of the state of incorporation will be applied to determine the existence and extent of a shareholder's liability to the corporation for assessments or contributions and to its creditors for corporate debts." Restatement (Second) of Conflict of Laws § 307 (1971).[7]

---

[7] New York choice-of-law rules – which govern in a diversity case – are the same. *See Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, 552 F. App'x 13, 15 (2d Cir. 2014); *Fletcher et al. v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995).

As noted above, Seat Scouts is a Nebraska limited liability company. (SAC ¶ 12.) Applying Nebraska law, the Court finds that the factual allegations in the SAC do not raise a plausible inference that Seat Scouts LLC is an alter ego of its members, Gainor Software LLC and Volpone Software LLC.

The members and managers of limited liability companies in Nebraska "are generally not liable for a debt, obligation, or liability of the company. And a court will disregard such a company's identity only where the company has been used to commit fraud, violate a legal duty, or perpetrate a dishonest or unjust act in contravention of the rights of another." *Thomas & Thomas Court Reporters, L.L.C. v. Switzer et al.*, 810 N.W.2d 677, 685 (Neb. 2012) (citation omitted).

The Supreme Court of Nebraska has enumerated four factors relevant to determining whether a company is merely an alter ego:

> (1) grossly inadequate capitalization, (2) insolvency of the debtor corporation at the time the debt is incurred, (3) diversion by the shareholder or shareholders of corporate funds or assets to their own or other improper uses, and (4) the fact that the corporation is a mere facade for the personal dealings of the shareholder and that the operations of the corporation are carried on by the shareholder in disregard of the corporate entity.

*Christian v. Smith*, 759 N.W.2d 447, 462 (Neb. 2008); *see id.* at 463 ("The separate entity concept of the corporation may be disregarded where the corporation is a mere shell, serving no legitimate business purpose . . . .").

In this case, the SAC contains only three factual allegations relevant to the alter ego issue: (1) Seat Scouts is controlled by a pair of family members (SAC ¶¶ 8, 10, 12); (2) Seat Scouts and one of its members, Volpone Software, share an address and a registered agent (SAC ¶¶ 10-13); and (3) Seat Scouts and its members all came into existence within three weeks of each other (SAC ¶¶ 41-43).

These allegations do not support a plausible inference that, under Nebraska law, Seat Scouts "is a mere facade for the personal dealings" of its

members, or that it was "a mere shell, serving no legitimate business purpose." *Christian*, 759 N.W.2d at 462-63. As a result, the Court will not disregard the separate entity of Seat Scouts LLC, and the Seat Scouts Owners other than Gainor cannot be liable for the wrongdoing of Seat Scouts alleged in this action.

Accordingly, defendants' motion is granted to the extent it seeks to dismiss the unfair competition claim with respect to the Seat Scouts Owners other than Gainor.

### C. Conversion

Conversion is "an intentional act of 'dominion or control over a chattel which . . . seriously interferes with the right of another to control it.'" *Thyroff v. Nationwide Mut. Ins. Co. et al.*, 8 N.Y.3d 283, 288 (2007) (quoting Restatement (Second) of Torts § 222A(1) (1965)). A conversion claim will lie only where the defendant's exercise of control was "to the exclusion of the owner's rights." *Id.* at 288-89 (quoting *State v. Seventh Regiment Fund, Inc.*, 98 N.Y.2d 249, 259 (2002)). The U.S. Court of Appeals for the Second Circuit has interpreted this to require "the *complete* exclusion of the rightful possessor." *Harper & Row Publishers, Inc. et al. v. Nation Enters. et al.*, 723 F.2d 195, 201 (2d Cir. 1983) (emphasis added), *rev'd on other grounds*, 471 U.S. 539 (1985); *see GEO Grp., Inc. v. Cmty. First Servs., Inc.*, No. 11-Cv-1711, 2012 WL 1077846, at *9 (E.D.N.Y. Mar. 30, 2012).

The parties disagree about what is required to show control "to the exclusion of the owner's rights," *Thyroff*, 8 N.Y.3d at 288-89, in the context of proprietary electronic information. According to defendants, the traditional rule still applies such that it is necessary to plead *complete* exclusion from the information, and no conversion claim will lie where the plaintiff maintained access to the allegedly converted information. Here, of course, Broker Genius maintained access to AutoPricer at all times.

Broker Genius, on the other hand, contends that a defendant's control over proprietary electronic information is "to the exclusion of the owner's rights," *id.*, where the defendant simply copies the information and uses it in a manner that interferes with the plaintiff's *exclusive* rights to, for example, duplicate it or create derivative works from it. In that case, Broker Genius's

10

theory goes, the plaintiff has been completely excluded from those exclusive rights, and it is not necessary to show that it was excluded from having the information itself.

In support of its argument, Broker Genius relies on cases where conversion claims relating to proprietary electronic information were permitted to proceed notwithstanding that the plaintiff retained a copy of its own information.  *See Clark St. Wine & Spirits et al. v. Emporos Sys. Corp.*, 754 F. Supp. 2d 474, 484 (E.D.N.Y. 2010) (conversion of customer credit card information); *Astroworks, Inc. v. Astroexhibit, Inc. et al.*, 257 F. Supp. 2d 609, 618 (S.D.N.Y. 2003) (conversion of ideas and information as instantiated in a website); *N.Y. Racing Ass'n v. Nassau Reg'l Off-Track Betting Corp.*, 29 Misc. 3d 539, 545-46 (N.Y. Sup. Ct. 2010) (conversion of audio-visual simulcasts).

However, where the issue disputed here has been addressed squarely by courts in this circuit, they have uniformly rejected the theory advanced by Broker Genius.  *See Reis, Inc. et al. v. Spring11 LLC*, No. 15-Cv-2836, 2016 WL 5390896, at *10-11 (S.D.N.Y. Sept. 26, 2016) ("While New York courts have recognized that conversion can be predicated on the loss of intangible electronic data, that case law has not 'altered the traditional rule requiring the exercise of unauthorized dominion and control to the complete exclusion of the rightful possessor.'" (alterations omitted) (quoting *GEO Grp.*, 2012 WL 1077846, at *9)); *Hyo Jung et al. v. Chorus Music Studio, Inc. et al.*, No. 13-Cv-1494, 2014 WL 4493795, at *8 (S.D.N.Y. Sept. 11, 2014) (same); *SBIW, Inc. v. Gen. Elec. Co.*, No. 10-Cv-7812, 2013 WL 5338525, at *13-14 (S.D.N.Y. Sept. 24, 2013) (same); *GEO Grp.*, 2012 WL 1077846, at *8-9 (same); *see also Cont'l Indus. Grp., Inc. v. Altunkilic*, No. 14-Cv-790, 2017 WL 2895933, at *2 n.3 (S.D.N.Y. July 7, 2017), *report and recommendation adopted*, 2018 WL 1508566 (S.D.N.Y. Mar. 27, 2018); *Obeid v. La Mack et al.*, No. 14-Cv-6498, 2016 WL 5719779, at *9-10 (S.D.N.Y. Sept. 30, 2016).

Because the parties agree that Broker Genius maintained access at all times to the information that was allegedly converted – the AutoPricer product itself – the Court finds that Broker Genius has not pled a claim of conversion pursuant to New York law.  Accordingly, defendants' motion is granted to the extent it seeks to dismiss the conversion claim.

### D. Tortious Interference With Business Relations

To state a claim of tortious interference with business relations in New York, a plaintiff must allege that: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship.'" *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015) (quoting *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008)); *Nadel v. Play by Play Toys & Novelties, Inc.*, 34 F. Supp. 2d 180, 187 (S.D.N.Y. 1999), *aff'd in relevant part*, 208 F.3d 368 (2d Cir. 2000).

"As to the third element" – wrongful means – "a plaintiff [must] show, 'as a general rule,' that 'the defendant's conduct amounted to a crime or an independent tort.'"[8] *16 Casa Duse*, 791 F.3d at 262 (alterations omitted) (quoting *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004)). Such conduct "is, by definition, conduct directed *not at the plaintiff itself*, but at the party with which the plaintiff has or seeks to have a relationship." *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F. App'x 102, 107 (2d Cir. 2012) (quoting *Carvel*, 3 N.Y.3d at 192); *see Carvel*, 3 N.Y.3d at 192 ("[T]he economic pressure that must be shown is not . . . pressure on the [plaintiff], but on the [plaintiff's] customers."). Making products available to customers "at attractive prices" is "legitimate persuasion," not wrongful means. *Carvel*, 3 N.Y.3d at 192.

Because the only allegations in the SAC with respect to defendants' conduct directed at Broker Genius's customers are in the nature of "legitimate persuasion," *Carvel*, 3 N.Y.3d at 192, the Court finds that Broker Genius has not stated a claim of tortious interference with business relations. The wrongful conduct alleged in the SAC – that defendants obtained access

---

[8] Alternatively, wrongful means can be shown "where a defendant engages in conduct 'for the sole purpose of inflicting intentional harm on plaintiffs.'" *16 Casa Duse*, 791 F.3d at 262 (quoting *Carvel*, 3 N.Y.3d 182 at 190). Broker Genius's allegation of such "malice" is completely conclusory (*see* SAC ¶ 80), and thus, insufficient.

to AutoPricer under false pretenses and derived Command Center from it – is directed at Broker Genius, not its customers.

Accordingly, defendants' motion is granted to the extent it seeks to dismiss the claim of tortious interference with business relations.

### E. Unjust Enrichment

"The 'essence' of [an unjust enrichment] claim 'is that one party has received money or a benefit at the expense of another.'" *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (quoting *City of Syracuse v. R.A.C. Holding, Inc.*, 258 A.D.2d 905 (4th Dep't 1999)). Such a claim "may be pursued only in the absence of a contract or, in the alternative, where there is a doubt about the existence or enforceability of a contract." *McBeth v. Porges et al.*, 171 F. Supp. 3d 216, 231 (S.D.N.Y. 2016) (citing *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J.*, 448 F.3d 573, 586-87 (2d Cir. 2006)).

An unjust enrichment claim pleaded in the alternative is nonetheless impermissibly duplicative of a contract claim where there is "no circumstance in which plaintiffs' [contract] claim would fail yet they still would be entitled, in equity and good conscience, to restitution from [defendants]." *Paulino et al. v. Conopco, Inc.*, No. 14-Cv-5145, 2015 WL 4895234, at *4 (E.D.N.Y. Aug. 17, 2015); *see McBeth*, 171 F. Supp. 3d at 232 ("[T]o the extent that [p]laintiff's other claims succeed, the unjust enrichment claim is duplicative; if his other claims are defective, an unjust enrichment claim cannot remedy the defects." (alterations omitted) (quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 791 (2012))).

Here, the essence of Broker Genius's unjust enrichment claim is that defendants wrongfully used the information they gained through Gainor's access to AutoPricer for their own benefit in developing their Command Center product. However, defendants' conduct was only wrongful if it violated the Terms of Use. Thus, there is no circumstance in which Broker Genius's contract claim would fail yet Broker Genius still would be entitled, in equity and good conscience, to restitution from defendants. *See McBeth*, 171 F. Supp. 3d at 232; *Paulino*, 2015 WL 4895234, at *4. Therefore, the unjust enrichment claim is duplicative of the contract claim.

It is true, as Broker Genius points out, that no contract exists between it and the Seat Scouts Owners other than Gainor. However, "[t]o allow [Broker Genius] to bring unjust enrichment claims against [those defendants] notwithstanding the contract between [it] and [Gainor] would effectively permit an end-run around the requirements of the common law alter ego doctrine." *McBeth*, 171 F. Supp. 3d at 231 (citing *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295 F.Supp.2d 366, 393 (S.D.N.Y. 2003)).

Accordingly, defendants' motion is granted to the extent it seeks to dismiss the unjust enrichment claim.

### F.  Breach of the Implied Covenant of Good Faith and Fair Dealing

> "Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." "New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." Therefore, when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant.

*Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) (alteration and citations omitted) (quoting *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80-81 (2d Cir. 2002)).

Because Broker Genius's contract claim and implied covenant claim are based on the same facts, the latter is redundant. Accordingly, defendants' motion is granted to the extent it seeks to dismiss the claim for breach of the implied covenant of good faith and fair dealing.

### G.  Attorneys' Fees as a Requested Remedy

It is a "bedrock principle" of American law that "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides

otherwise." *Zurich Am. Ins. Co. et al. v. Team Tankers A.S. et al.*, 811 F.3d 584, 590 (2d Cir. 2016) (quoting *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164 (2015)). Broker Genius points to no such contract or statute and the Court is aware of none.

Accordingly, defendants' motion to dismiss is granted to the extent Broker Genius seeks attorneys' fees as a remedy for the conduct alleged in the SAC. If Broker Genius intends to seek its attorneys' fees as a sanction for misconduct during the course of litigation, *see* Fed. R. Civ. P. 11(c)(4); *see also id.* 54(d); 28 U.S.C. § 1927, it may do so by motion at the appropriate time. The Court is aware of no sanctionable litigation misconduct by any of the parties at this time.

### H. Punitive Damages as a Requested Remedy

Where an action "has its genesis in [a] contractual relationship between the parties," *Schonfeld v. Hilliard et al.*, 218 F.3d 164, 184 (2d Cir. 2000) (quoting *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 316 (1995)), the plaintiff, in order to recover punitive damages, "must establish that the defendant's conduct: (1) is actionable as an independent tort; (2) was sufficiently egregious; and (3) was directed not only against the plaintiff, but was part of a pattern of behavior aimed at the public generally." *Id.* at 183-84 (citing *New York Univ.*, 87 N.Y.2d at 316, and *Rocanova v. Equitable Life Assurance Soc'y of the U.S.*, 83 N.Y.2d 603, 613 (1994)). By contrast, where an action does not have its genesis in such a contractual relationship, the defendant's conduct "need not be directed at the general public." *Fraternity Fund Ltd. et al. v. Beacon Hill Asset Mgmt., LLC et al.*, 479 F. Supp. 2d 349, 374 (S.D.N.Y. 2007).

The parties dispute whether it is necessary for Broker Genius to satisfy the public harm element in order to recover punitive damages. Broker Genius does not dispute that the SAC does not allege public harm. Thus, Broker Genius cannot recover punitive damages if this action "has its genesis in [a] contractual relationship between the parties." *New York Univ.*, 87 N.Y.2d at 316.

In *Carvel Corp. v. Noonan*, the Second Circuit considered the availability of punitive damages in the context of a claim that, as here, "present[ed] mixed issues of contract and tort." *Carvel Corp. v. Noonan et al.*, 350 F.3d 6, 24

15

(2d Cir. 2003). The court observed that "New York courts have applied the 'public harm' standard only to cases in which the defendant's allegedly tortious conduct was directly related to the contract between the plaintiff and defendant," highlighting, as a typical example, claims where "the defendant fraudulently misrepresented something about the contract between the two." *Id.* at 25. The tort at issue in *Carvel* was one for tortious interference with economic relations, and the court observed that such a claim alleged tortious conduct "with regard to the relations between appellees *and their customers*," rather than tortious conduct *between the contracting parties. Id.* (emphasis added). In that court's view, "Carvel could have interfered with appellees' relationship with their customers in the absence of [a contract]," and therefore "appellees' case [did] not necessarily 'arise from' a contract dispute." *Id.*[9]

In the present case, the Court has already found that the SAC does not allege tortious conduct by defendants directed at Broker Genius's customers. The only tort claim that remains is the one for unfair competition against Gainor and Seat Scouts.

As to the unfair competition claim, the tortiousness of defendants' conduct depends, for both that claim and the contract claim, upon the existence of a contract. Unlike the tortious interference claim at issue in *Carvel*, defendants' competition with Broker Genius could not have been tortiously unfair in the absence of a contract, *see Carvel*, 350 F.3d at 25 – that is, defendants' conduct was only wrongful if it violated the Terms of Use. Accordingly, "defendant[s'] allegedly tortious conduct was directly related to the contract between [Broker Genius] and defendants," and punitive damages are unavailable to Broker Genius in the absence of public harm. *Id.* at 25; *see also Cookware Co. (USA), LLC v. Austin et al.*, No. 15-Cv-5796, 2016 WL 7378762, at *6 (S.D.N.Y. Dec. 8, 2016) (dismissing punitive damages

---

[9] The court declined to actually reach this conclusion, however, opting instead to certify the question to the New York Court of Appeals. *Carvel*, 350 F.3d at 26. That court never reached the question because it determined that Carvel had not tortuously interfered with economic relations in the first place. *See Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 189 (2004).

request in the context of an unfair competition claim asserted alongside a breach of contract claim).

Because Broker Genius does not dispute that the SAC fails to plead public harm, it cannot recover punitive damages. Accordingly, defendants' motion is granted to the extent it seeks to dismiss the requests for punitive damages.

### III. CONCLUSION

For the reasons set forth above, defendants' motion to dismiss the Second Amended Complaint is DENIED with respect to the SAC's unfair competition claim against Drew Gainor and Seat Scouts, and GRANTED in all other respects.

Because all of the claims against Guinio Volpone, Ray Volpone, Stuart Gainor, Volpone Software LLC, Gainor Software LLC, and Event Ticket Sales LLC, have been dismissed, those parties are hereby dismissed from this action.[10] The Clerk of Court is hereby directed to amend the caption of this action accordingly. The remaining defendants shall file their responsive pleading to the SAC on or before May 29, 2018. *See* Fed. R. Civ. P. 12(a)(4). The sole claims that remain in this action are the breach of contract claim

---

[10] These parties remain bound by the preliminary injunction currently in force. *Volpone*, 2018 WL 2175552, at *23; *see* Fed. R. Civ. P. 65(d)(2).

against Drew Gainor and the unfair competition claim against Gainor and Seat Scouts LLC.

Dated: New York, New York

May 14, 2018

SO ORDERED:

/s/ Sidney H. Stein

Sidney H. Stein, U.S.D.J.