USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/29/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

BROKER GENIUS, INC.,

                        Plaintiff,

      -against-

SEAT SCOUTS LLC, et al.,

                        Defendants.

-----------------------------------------------------------------X

17-CV-08627 (SHS)(SN)

**OPINION & ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

      Counsel for the parties in this case have consistently engaged in litigation tactics that "unreasonably and vexatiously" multiply the proceedings in this case. 28 U.S.C. § 1927. The current dispute is more of the same.

      On September 4, 2018, Plaintiff served a subpoena on Stage Front, a non-party to this litigation. ECF No. 253, at 2. The parties' dispute arises from this subpoena. Defendants contend that they secured from Plaintiff an "express agreement that [Defendants] would proceed under [Plaintiff's] subpoena." ECF No. 252, at 2.[1] Defendants argue that Plaintiff "slow-walked" its negotiations with Stage Front past the close of fact discovery, thereby preventing Defendants from conducting a deposition. Defendants state that Stage Front will provide relevant testimony favorable to their defenses at trial. Id. at 3. To prevent undue prejudice, Defendants request leave to obtain *de bene esse* testimony from Stage Front, or alternatively, to extend the discovery

---

[1] Although Defendants do not provide a citation for this claim, Plaintiff does not explicitly oppose Defendants' contention, and there is circumstantial evidence (discussed below) that some type of agreement existed.

period so that Defendants can depose Stage Front. Id. at 1, 3. Because Defendants have not demonstrated good cause to reopen discovery, their request is DENIED.

## BACKGROUND

Stage Front is a Maryland corporation engaged in the ticket brokerage business. Stage Front's "autopricer technology" may be relevant to the claims and defenses in this litigation. On September 4, 2018, Plaintiff served a subpoena on Stage Front, and Stage Front filed its objections on September 12. ECF No. 253, at 2. Plaintiff responded promptly and appears to have engaged in good faith negotiations. Indeed, on the same day that Plaintiff received Stage Front's objections, Plaintiff spoke with Stage Front in an effort to resolve their disputes. ECF No. 252, Exhibit 5, at 8–9. The parties engaged in further discussions on September 18, and Plaintiff emailed Stage Front with a proposal to resolve their remaining disputes on September 21. Id. at 6–7.

On September 26, Defendants asked Plaintiff for an update regarding the Stage Front discovery. In an email exchange, Defendants indicated that they wanted to participate in discussions regarding the scope of document production and the timing of a deposition. Plaintiff updated Defendants on the status of the subpoena. Plaintiff further stated that, under the Federal Rules of Civil Procedure, Defendants could independently serve a subpoena on Stage Front. ECF No. 253, Exhibit B.

On September 27, Stage Front emailed both Plaintiff and Defendants. Stage Front's counsel explained that he had been "recently contacted" by Defendants and that Defendants stated they would be serving a deposition subpoena. To avoid litigation in the District of Maryland (where Stage Front is located), Stage Front suggested that, after Stage Front and Plaintiff resolved their remaining dispute, Stage Front would share the final agreement with

Defendants for their approval. Defendants agreed that "one track" would be best; it does not appear that Plaintiff responded. ECF No. 252, Exhibit 1, at 1.

Plaintiff and Stage Front continued to negotiate the scope of Plaintiff's document requests. Plaintiff made a proposal on September 27 and submitted a follow-up email on September 30. ECF No. 252, Exhibit 5, at 3–4. On October 3, Stage Front emailed Plaintiff and carbon copied Defendant. The email stated that Plaintiff would memorialize an agreement for Stage Front's review and that Stage Front would pass that agreement onto Defendants for approval. Id. at 2–3. Plaintiff responded that the parties had reached an agreement and noted the upcoming discovery deadline on October 10. Stage Front replied that it was unaware of the deadline, but that it would advise the parties as the deadline approached. Id. at 2.

On October 11, one day after the close of fact discovery, Plaintiff approached Defendants regarding the Stage Front subpoena. Plaintiff memorialized this conversation in an email on October 12. Specifically, Plaintiff stated that it would forego seeking discovery from Stage Front if Defendants confirmed that they would not call Stage Front to testify at trial; Defendants indicated that they could obtain discovery regardless of Plaintiff's intentions, but committed to clarifying how Defendants planned to proceed. When Defendants failed to respond by October 16, Plaintiff sought the Court's guidance as to how the parties should move forward.[2] ECF No. 244, at 1 & Exhibit 1.

In the interim, Defendants communicated with Stage Front regarding Plaintiff's subpoena. On October 18, after this discussion had taken place, Defendants told Plaintiff in an email that there was a "tentative plan" with Stage Front to narrow the scope of the document

---

[2] In an Endorsed Order, the Court noted that it does not offer guidance in the abstract and instructed the parties to make an appropriate application if they sought relief from the October 10 discovery deadline. ECF No. 246.

request; to have Stage Front produce documents on the 25th; and to hold a deposition on the 29th. Plaintiff objected to Defendants' "unilateral plan and schedule." ECF No. 252, Exhibit 6, at 1–2. Stage Front summarized Defendants' communications in a separate email chain. While Defendants may not have been acting in bad faith, Defendants seem to have misrepresented Plaintiff's position to Stage Front, as well as Stage Front's position to Plaintiff.[3] ECF No. 253, Exhibit D, at 1–2.

The agreement between Plaintiff and Stage Front quickly fell apart. On October 18, Plaintiff emailed Stage Front — carbon copying Defendants — stating that Plaintiff could no longer agree to the parties' previous limitations on Plaintiff's subpoena.[4] Plaintiffs further stated that it intended to enforce its subpoena in the District of Maryland if Stage Front maintained its original objections. ECF No. 253, Exhibit E, at 1.

---

[3] Stage Front described the contents of Defendants' communications in an email on October 18. The email states in part:
> Chris [Defense Counsel] stated that he had been in discussions with you [Plaintiff Counsel] and that in those discussions, you indicated that your efforts with regard to Stage Front were defensive in nature so the scope of the deposition was largely dependent on him. Chris said that he does not think the parties' needs are materially impacted by Stage Front's production of documents. In part, because his clients had already produced documents which would be responsive to Stage Front's subpoena. . . . At no time did I ever agree to produce documents on the 25th or that the deposition would be taken on the 29th. What I did say was that I needed to hear from both of you, together, as to what the scope of the deposition and production would be. And that if [the production] was limited . . . as Chris stated, I could produce documents by the 25th and be available for a deposition on the 29th.

ECF 253, Exhibit D, at 1.

[4] For example, Plaintiff had limited the scope of Document Request Number 5 and had agreed to stipulate that it would not use any information produced by Stage Front as the basis for any claims against Stage Front. ECF No. 252, Exhibit 5, at 1. In its October 18 email, Plaintiff stated that it could no longer agree to these conditions, in part because "recently disclosed evidence" raised concerns that Stage Front had worked in concert with Defendants to violate the Court's preliminary injunction. ECF No. 253, Exhibit E, at 1.

4

A week later, on October 25, Defendants asked Plaintiff for an update on "where you stand in obtaining the Stage Front deposition." Plaintiff stated that Stage Front was objecting to the subpoena and that the parties were now outside the fact discovery period. In response, Defendants informed Plaintiff that they planned to seek leave from the Court to obtain *de bene esse* testimony from Stage Front. Defendants filed their letter motion on October 29, 2018.

## LEGAL STANDARD

A *de bene esse* deposition — sometimes referred to as a "preservation" deposition — is a deposition taken "in anticipation of a future need." Black's Law Dictionary 408 (7th ed. 1999). In the eighteenth century, for example, parties in maritime litigation could take a *de bene esse* deposition immediately upon filing the complaint to avoid the possibility that a witness would set sail during the lawsuit. Wright & Miller, Federal Practice and Procedure, § 2105 (3d ed.). More recently, courts have allowed parties to conduct a preservation deposition when the party demonstrates that the witness may become unavailable for trial. See, e.g., Shim-Larkin v. City of New York, No. 16-CV-6099, 2018 WL 3407710, at *1 (S.D.N.Y. May 11, 2018) (allowing plaintiff to conduct a *de bene esse* deposition when the witness suffered from a serious medical condition).

There is some disagreement among the district courts in New York whether a *de bene esse* deposition may proceed after the close of discovery. McDermott v. Liberty Mar. Corp., No. 08-CV-1503, 2011 WL 2650200, at *2 (E.D.N.Y. July 6, 2011) (citing Kingsway Fin. Servs., Inc. v. Pricewaterhouse–Coopers LLP, No. 03-CV-5560, 2008 WL 5423316, at *2 (S.D.N.Y. Dec. 31, 2008)). In Manley v. AmBase Corp., however, the Court of Appeals for the Second Circuit provided insight into the proper standard. 337 F.3d 237 (2d Cir. 2003). Discussing the use of *de bene esse* depositions at trial, the court held that Rule 32 "draws no distinction between

5

depositions taken for purposes of discovery and those taken for trial." Id. at 247 (citing United States v. IMB Corp., 90 F.R.D. 377, 381 n.7 (S.D.N.Y. 1981)). This suggests that discovery depositions and preservation depositions should be treated alike under the Federal Rules of Civil Procedure. Accordingly, the court concludes that *de bene esse* depositions, like depositions taken for discovery purposes, cannot be conducted after the close of discovery absent extenuating circumstances.

Other lower courts have arrived at the same conclusion. In Sanofi-Synthelabo v. Apotex Inc., for example, the court reasoned that *de bene esse* depositions were governed by the court's scheduling order because the "Federal Rules of Civil Procedure make no distinction between depositions taken for the purpose of discovery and those taken *de bene esse*." No. 02-CV-2255, 2005 WL 469594, at *1 (S.D.N.Y. Feb. 18, 2005). Accordingly, because discovery had already closed — and because defendants failed to provide good cause for modifying the scheduling order — that court denied defendants' request to conduct a *de bene esse* deposition. Id. Other district courts in this circuit have adopted a similar position. Compare George v. Ford Motor Co., No. 03-CV7643, 2007 WL 2398806, at *12 (S.D.N.Y. Aug. 17, 2017) (finding no good cause to modify the scheduling order because there were no "unforeseen events arising after the close of discovery" and because both sides "had every opportunity to seek [these] deposition[s] . . . during the discovery period") with Skim-Larkin, 2018 WL 3407710, at *1 (finding good cause existed when the witness had a "serious medical condition that may make her unavailable to testify at trial").

**DISCUSSION**

Fact discovery closed on October 10, 2018. ECF No. 180. Accordingly, Defendants may obtain *de bene esse* testimony from Stage Front only if they can demonstrate good cause to

modify the Court's Scheduling Order. Because Defendants have failed to make this showing, their request is denied.

Defendants had every opportunity to depose Stage Front during the discovery period. On May 21, 2018, Defendants "presented the relevant Stage Front evidence" as part of its motion practice before Judge Stein. ECF No. 252, at 1. Accordingly, Defendants were aware of Stage Front's importance at least five months before the close of fact discovery. Defendant's failure to obtain the relevant discovery during this extensive window cautions against a finding of good cause.

Defendants maintain that they secured an agreement with Plaintiff to proceed under Plaintiff's subpoena. Therefore, Defendants argue, the "failure to obtain a discovery deposition rests solely and exclusively with Plaintiff." ECF No. 252, at 1–2. Even assuming an agreement existed — an assumption not entirely supported by the record — Defendants' argument is unpersuasive. By relying on an opposing party's subpoena, litigants assume the risk that they may lose the opportunity to obtain discovery, either because the subpoena was quashed, or because it was withdrawn. That is exactly what happened here. After serving the subpoena, Plaintiff engaged in responsive, good-faith negotiations with Stage Front. That Plaintiff and Stage Front were ultimately unable to reach an agreement was a risk that Defendants accepted. Indeed, Defendants themselves seemed to be aware of this possibility. They sent a courtesy copy of a subpoena to Stage Front, but never followed through with actually serving it. No. 252, Exhibit 1, at 1. As the fact discovery deadline drew closer and still no documents had been produced, Defendants should have taken steps to ensure they could obtain any necessary discovery. The history of counsel's litigation strategies only undermines Defendants' position that they reasonably relied on Plaintiff's counsel's cooperation.

Moreover, Defendants are at least partially at fault for the breakdown in Plaintiff's negotiations with Stage Front. Plaintiff and Stage Front reached an agreement on October 5, and Stage Front's counsel stated that he would provide an update once the parties were closer to the discovery deadline (i.e. within the next five days). ECF No. 252, Exhibit 5, at 2. After discovery closed, but before any documents had been produced, Defendants contacted Stage Front regarding *Plaintiff's* subpoena. Defendants created a "tentative plan" to narrow the document production and to schedule Stage Front's deposition. While it seems Defendants acted in good faith, their efforts created a roadblock: Plaintiff, quite reasonably, felt that Defendants had "taken over" its subpoena, and Stage Front felt confused as to the actual scope of Plaintiff's request. ECF No. 253, at 3 & Exhibit D. Similarly, Defendants did not timely inform Plaintiffs that Defendants planned to call Stage Front as a trial witness. Again, although Defendants may have acted in good faith, their actions caused Plaintiff to believe that discovery from Stage Front was not a critical need. ECF No. 253, at 3. On these facts, the Court cannot find good cause to reopen discovery.

Defendants emphasize that some courts have allowed *de bene esse* depositions to occur even after the close of discovery. ECF No. 252, at 1. These cases are distinguishable. In RLS Associates, LLC v. United Bank of Kuwait PLC, for example, the witness left his employment with defendant and moved from New York to Dubai during the litigation. No. 01-CV1290, 2005 WL 578917, at *5 (S.D.N.Y. Mar. 11, 2005). Although the discovery period had closed, the court allowed the defendants to conduct a *de bene esse* deposition because they had no reason to schedule a deposition of their own witness. Id. at *7. Here, Defendants have long known that Stage Front is located in the District of Maryland, outside the subpoena authority of this Court.

Accordingly, unlike that of the defendant in <u>RLS Associates</u>, Defendants' failure to schedule a deposition during the discovery period cannot be excused.

## CONCLUSION

Defendants request leave to obtain *de bene esse* testimony from Stage Front, or alternatively, to extend the discovery period so that Defendants can depose Stage Front. Because Defendants have not demonstrated good cause to reopen discovery, their request is DENIED. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 256.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:      November 29, 2018
               New York, New York