# HINCKLEY & HEISENBERG LLP

ATTORNEYS AT LAW
880 THIRD AVENUE 13TH FLOOR
NEW YORK, NY 10022-4730
WWW.HINCKLEY.ORG

TELEPHONE 212-845-9094      Christoph C. Heisenberg
FACSIMILE 212-820-9790      cheisenberg@hinckley.org

January 6, 2019

**BY ECF**

Hon. Sidney H. Stein, U.S.D.J.
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

    Re:    *Broker Genius, Inc. v. Seat Scouts LLC, et al.*. (SDNY 1:17-cv-08627-SHS)

Dear Judge Stein:

    We are counsel to Defendants Seat Scouts LLC and Drew Gainor. We are writing to respectfully bring to the Court's attention three evidentiary issues on which Defendants would like to be heard outside the presence of the jury as promptly as possible, as it involves evidentiary disputes likely to arise Monday during testimony.

    The first concerns the issue of the injunction and the contempt that were addressed at Wednesday's argument of the *in limine* motions. While the Court issued a decision indicating that these issues are not excluded, it invited further briefing on that issue. Both parties submitted further authority on Wednesday night as to the relevance or irrelevance of the contempt issue to the misappropriation claim. With the testimony of Mr. Sherman, and the expected next witnesses, whether Prof. Koskinen and testimony about Event Watcher, or Mr. Dell and his damage calculations that specifically incorporate the injunction, or Mr. Gainor, a final ruling on the exclusion or inclusion of these very significant facts is important for preparing on what evidence to adduce. If the information is being presented to establish Mr. Gainor's bad faith, fairness requires that Defendants be permitted to show all of the relevant facts to defend their good faith and allow the jury to make that determination, including all of the facts leading to the finding.

    We believe the issue of contempt would constitute per se prejudicial error that cannot be cured through a curative instruction. However, if the Court is inclined to continue its decision to allow evidence of the injunction and the contempt[1], Defendants would request a curative instruction advising the jury that the injunction was a preliminary determination made without the benefit of full evidence, and that specifically

---

[1] We recognize that the Court granted the Defendants' motion *in limine* on the issue of the injunction, but because the issue of contempt necessarily brings with it the injunction, the second ruling effectively negated the first ruling on the issue of the injunction. We respectfully submit that allowing the jury to hear of the contempt would be prejudicial error, that would not be fully ameliorated by a curative instruction.

**HINCKLEY & HEISENBERG LLP**
Hon. Judge Sidney H. Stein
January 6, 2019
Page 2

the 2015 Event Watcher design documents, and that both the injunction and the contempt are being appealed. Without such an instruction, the jury would not only likely defer to the Court on the findings the Court did make, but also incorrectly conclude the Court's preliminary determination also encompassed the Event Watcher files.

In addition, there is an evidentiary dispute between the parties concerning certain hearsay statements by Seat Metrics' Danny Panzer in a September 2016 set of emails. (Plaintiff Exhibits 123, 501 502 and 503). A copy of the relevant hearsay portion that is in each, as included in Exhibit 503 is attached as Exhibit A. As the Court recalls, the Court excluded Mr. Panzer's email from 2017 on the basis of the hearsay rule. We believe Mr. Panzer's statements in the September 2016 email constitute hearsay, and should be redacted, and that questions to Mr. Gainor that incorporate Mr. Panzer's statements are also hearsay. Plaintiff disagrees.

Lastly, during the Plaintiff's opening statement there were several incorrect assertions made that Mr. Gainor had claimed that the laptop was "missing", or that he was hiding it. No such claim was ever made. As I informed the Court on December 4, 2017, the laptop was in Mrs. Gainor's possession:

> The Court: Where is the missing Gainor laptop?
>
> MR. HEISENBERG: I don't know where it is exactly, but if your Honor would like him to do it, I think he's got from -- I had the briefest of conversations with him about it when we stepped into the hallway. There were other issues, but my understanding of it he said, I believe he said it's his wife's laptop. His wife is now using it.

Dec. 4, 2017 Hearing at 31.

In response, on December 11, 2017, Plaintiff made a specific request to Magistrate Netburn. Critically, and contrary to Plaintiff's opening, they did **not** request to have the laptop provided to them. Rather, they requested that Mr. Gainor himself attempt to secure information from the laptop and whether he could identify a specific Internet Protocol address:

> UNIDENTIFIED MALE VOICE: Your Honor, that's simply not credible. We did produce those from Broker Genius. In fact, they were discussed during the hearing in front of Judge Stein last week. What we don't have are the IP addresses from Mr. Gainor's old laptop.
>
> THE COURT: OK. I've ordered the defendants to search the laptop whether that means, the hard drive or through a service provider -- it's the three month period from May 1, 2016 through July 31, 2016 -- and to provided those IP addresses. Let's set a deadline for doing that of this Friday.

**H**INCKLEY & **H**EISENBERG LLP
Hon. Judge Sidney H. Stein
January 6, 2019
Page 3

Dec. 11, 2017 Hearing at 24.

      As directed by the Court, Mr. Gainor did search the laptop and his service provider and could not identify the IP address.  (A "static" IP address is not assigned to a specific computer, it is set by the internet provider through which the computer accesses the internet.)  Yet, on December 19, 2017, right before the hearing, Plaintiff incorrectly suggested to Your Honor that the laptop was being withheld in some improper form. Your Honor directed that it be sent overnight to Plaintiff's forensic firm on December 19th.  Mr. Gainor promptly did so exactly as directed.  We note that, as Mr. Gainor advised, Plaintiff's IT technicians also could not locate an IP address.  However, what the forensic firm found was that when Mr. Gainor deleted his own account and creating a new user account for his wife well before even starting to build Command Center, deleting the account did not erase information in his prior user account.  It merely put it into the background invisible to the users.  That is the additional information that was then recovered, thankfully, and that led to the Event Watcher files.  Contrary to Ms. Munoz's assertions to the jury, it was the Plaintiff, not Defendants, who have repeatedly tried to keep these files from being seen by the jury. Therefore, we wish to alert the Court that, should Plaintiff wish to adduce evidence to support counsel's opening argument, we will be utilizing the actual court orders – including the Plaintiff's motion to preclude filed in May 2018, and the December 7 motion *in limine* to exclude the evidence – to negate the false assertion of Plaintiff's counsel at opening.

                                        Respectfully submitted,

                                        Christoph Heisenberg

cc: Veronica Munoz (via ECF)