**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BROKER GENIUS, INC.,<br><br>　　　　　　　　　　*Plaintiff,*<br><br>v.<br><br>SEAT SCOUTS LLC and DREW GAINOR<br><br>　　　　　　　　　　*Defendants.* | No. 17-CV-8627-SHS |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**

**RENEWED MOTION FOR JUDGMENT UNDER RULE 50(b), OR ALTERNATIVELY**

**FOR A NEW TRIAL UNDER RULE 59**

HINCKLEY & HEISENBERG LLP
880 Third Avenue, Suite 13
New York, New York 10022
(212) 845-9094

# Contents

I. PRELIMINARY STATEMENT ................................................................................... 1

II. LAW .............................................................................................................................. 2

    A. BROKER GENIUS' OPPOSITION FAILS TO OVERCOME THE LEGAL DEFECTS TO THE CONTRACT CLAIM ................................................................ 2

        1. Broker Genius' Renewed Attempt To Disregard Seat Scouts' Status As A Separate Entity is Foreclosed By This Court's Prior Ruling .............................. 2

        2. Broker Genius' Effort To Avoid The Court's Prior Determination Concerning Thee Terms of Use ................................................................................................ 2

        3. The Verdict Was Based On Speculation And Not Competent Evidence ........... 3

    B. BROKER GENIUS' OPPOSITION FAILS TO THE OVERCOME THE LEGAL DEFECTS TO THE UNFAIR COMPETITION/MISAPPROPRIATION CLAIM .... 3

        1. The Claim Is Preempted By The Copyright Act .................................................. 4

        2. The Existence Of A Contract Cannot Constitute The Additional Element For Preemption, Because It Separately Invokes The "Independent Tort" Bar ......... 7

    C. BROKER GENIUS' ATTEMPT TO DISPUTE THAT IT HAS NO PROPRIETARY INTEREST IS CONTRARY TO THIS COURT'S RULINGS ................................... 8

    D. BROKER GENIUS' OPPOSITION TO A NEW TRIAL ACKNOWLEDGES THE VARIOUS TRIAL ERRORS THAT PREJUDICED DEFENDANTS ..................... 12

        1. The Court Conveyed To The Jury Its Own View Of Witness Credibility And Critical Evidence ...................................................................................................... 13

    E. THE JURY'S AWARD OF DAMAGES WAS EXCESSIVE AND NOT BASED ON THE EVIDENCE .................................................................................................. 14

III. CONCLUSION ............................................................................................................ 15

**Cases**

*Atrium Grp. De Ediciones Y Publicaciones, S.L. v. Harry N. Abrams, Inc.,* 565 F.Supp.2d 505 (S.D.N.Y. 2008) .................................................................................................................. 5

*Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*, No. 14 Civ. 9687 (VEC), 2016 WL 4916969 (S.D.N.Y. Feb. 11, 2016) ............................................................................................... 7

*Barclays Capital Inc. v. Theflyonthewall.com, Inc.*, 650 F.3d 876 (2d Cir. 2011) ..................... 4, 6

*Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.,* 373 F.3d 296 (2d Cir. 2004) ................................ 4

*Broker Genius, Inc. v. Zalta*, 280 F.Supp.3d 495 (S.D.N.Y. 2017) ............................................ 3, 9

*Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317 (E.D.N.Y. 2014) ........ 4, 5

*Demetriades v. Kaufmann*, 698 F. Supp. 521 (S.D.N.Y. Oct. 27, 1988) ........................................ 8

*Fox News Network, LLC v. TVEyes, Inc.*, 43 F. Supp. 3d 379, 398 (S.D.N.Y. 2014) .................... 6

*ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 478, 880 N.E.2d 852, 859 (2007) ............................... 8

*LoPresti v. Mass. Mut. Life Ins. Co.*, 820 N.Y.S.2d 275 (2d Dep't 2006) ...................................... 8

*Lowry's Reports, Inc. v. Legg Mason*, 271 F. Supp. 2d 737 (D. Md. 2003) .................................. 6

*Schroeder v. Pinterest Inc.,* 133 A.D.3d 12, 17 N.Y.S.3d 678 (1st Dep't 2015) ........................... 9

*Sorias v. Nat'l Cellular USA, Inc.*, 124 F.Supp.3d 244 (E.D.N.Y. 2015) ...................................... 4

*Wolo Mfg. Corp. v. ABC Corp.*, 349 F. Supp. 3d 176 (E.D.N.Y. 2018) ........................................ 5

*Woolcott v. Baratta*, No. 13-CV-2964 JS GRB, 2014 WL 1814130, at *10 (E.D.N.Y. May 7, 2014) ................................................................................................................................. 5

*Yantha v. Omni Childhood Ctr., Inc.*, 13-CV-1948 (ARR)(JMA), 2013 U.S. Dist. LEXIS 134940 (E.D.N.Y. Sept. 20, 2013) ................................................................................................ 8

### I. PRELIMINARY STATEMENT

Broker Genius' opposition does not meaningfully engage on the defects to the judgment. Contrary to Plaintiff's suggestions, the deficiencies set forth in the Rule 50(b) motion are principally legal not factual, and therefore the jury verdict does not shield it from the Rule 50 standard.

A principle example of this is that the misappropriation claim is preempted. Defendants' motion showed that Congress chose to make the Copyright and Patent Acts the only basis for protecting such intellectual property rights. Broker Genius' futile arguments that its claim was not a copying claim cannot be credited against its extensive trial arguments about the knock-off products. Another defect is that Plaintiff's contract and misappropriation claims can protect only proprietary technology, not AutoPricer v3 that this court already had ruled was in the public domain. As explained, Plaintiff's attempt to dispute this court's determination that the Terms of Use were insufficient to keep AutoPricer out of the public domain is nothing more than drawing distinctions without a difference. These legal determinations lend themselves to entry of judgment at this point.

Defendants' motion showed that the breach of contract claim is defective for several reasons beyond Defendants' longstanding objection to the court defining "derivative work" for the jury. There is a lack of privity between Seat Scouts and Broker Genius, which is significant because the Command Center product was created by Seat Scouts, not Gainor. Broker Genius' response pleads that the legal distinction between Gainor and Seat Scouts should be ignored, but that claim was already advanced and dismissed by this court in May 2018. In a final effort at creating liability under the contract, Broker Genius contorts itself by seeking to avoid the Court's prior ruling that the Terms of Use do not prohibit users such as Gainor from recording his thoughts on AutoPricer and disclosing information about AutoPricer to third parties such as Seat Scouts.

The Rule 59 request for the alternative of a new trial does call for the court's evaluation of the evidence and basic trial fairness. Defendants respectfully submit that the motion demonstrates 1) the

evidence of the injunction and contempt were not relevant, and 2) that prejudicial facts combined with the court's own statements to the jury about the court's view of the evidence overwhelmed the jury's function as the trier of fact and created an unfair trial to Defendants.

Finally, Broker Genius can offer no plausible explanation for the inconsistent verdicts on the two causes of action, apart from a legally incorrect argument concerning a potential measure. Broker Genius also does not dispute that the jury fully compensated Broker Genius for its future damages and included the loss of goodwill, and price erosion. Thus, the entry of a permanent injunction was inconsistent with the award of compensable damages.

## II. LAW

### A. BROKER GENIUS' OPPOSITION FAILS TO OVERCOME THE LEGAL DEFECTS TO THE CONTRACT CLAIM

#### 1. Broker Genius' Renewed Attempt To Disregard Seat Scouts' Status As A Separate Entity is Foreclosed By This Court's Prior Ruling

Broker Genius acknowledges that Seat Scouts, not Gainor, offered the alleged "derivative work," but tries to avoid this by arguing that the court should not "draw legal distinctions between Gainor and Seat Scouts and their conduct where there is no practical difference." (BG Mem. at 4). This argument is precluded by law of the case, as Broker Genius already pleaded a claim for piercing the corporate veil in the Second Amended Complaint and the court dismissed it in its May 14, 2018 Decision and Order. (ECF No. 120 at 8). Therefore, Broker Genius' current argument that the jury could legitimately disregard the separate legal distinction merely highlights the impermissible legal leap in holding Gainor liable for the actions of Seat Scouts.

#### 2. Broker Genius' Effort To Avoid The Court's Prior Determination Concerning Thee Terms of Use

Recognizing that gap, Broker Genius attempts to create a different legal theory for Gainor's liability, arguing for the first time that Gainor's breach was his disclosure of information to Seat

Scouts. That argument is not viable because this court has held, and Broker Genius agrees that it "is settled," (BG Mem. at 3-4), that the Terms of Use do not restrict Gainor from "describing to others the software's functions, structure and appearance." *Broker Genius, Inc. v. Zalta*, 280 F.Supp.3d 495, 522 (S.D.N.Y. 2017). None of the conduct cited by Broker Genius – Gainor making notes of things like the cycle times or noting the method for picking comps or noting how Broker Genius load information – otherwise violate the Terms of Use. Therefore, even this after-the-fact theory cannot support the breach claim against Gainor.

### 3. The Verdict Was Based On Speculation And Not Competent Evidence

Defendants also showed that the components cited by Broker Genius existed in the prior StageFront product and Event Watcher design. Broker Genius' efforts to disavow the incontrovertible documentary evidence of StageFront screen shots, and the testimony of the only witnesses with knowledge that the StageFront program reveals the pure speculation supporting its argument. Broker Genius does not dispute that its witnesses lacked any personal knowledge, and therefore could not refute the testimony of Defendants' witnesses. As a result, its sole basis for rejecting Eric Pancheri's testimony is that "the jury most likely found him biased towards Defendants because he agreed to testify for Defendants and had had two long conversations with Gainor (15 minutes) and his counsel, Mr. Heisenberg (45 minutes) in preparation for testifying at deposition." (BG Mem. at 5). This argument merely repeats the same improper argument made by Plaintiff's counsel at closing, explicitly inviting the jury to violate their duty and speculate about inducements for which there was no evidence. This speculation is not evidence. It makes plain that Broker Genius lacked any credible evidence to counter the actual evidence on this point.

### B. BROKER GENIUS' OPPOSITION FAILS TO THE OVERCOME THE LEGAL DEFECTS TO THE UNFAIR COMPETITION/MISAPPROPRIATION CLAIM

Defendants' motion showed that Broker Genius' misappropriation claim is preempted by both

the Copyright and Patent Acts.  Broker Genius' opposition starts by incorrectly suggesting preemption does not apply to claims for misappropriation of skills, labor or expenditures. See *Sorias v. Nat'l Cellular USA, Inc.*, 124 F.Supp.3d 244, 262 (E.D.N.Y. 2015) ("Plaintiffs' unfair competition claim, therefore, is necessarily preempted by federal patent law."); *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 331 (E.D.N.Y. 2014) ("plaintiffs' claim of unfair competition based on the allegation that defendants copied an unpatented product of plaintiffs is preempted and cannot serve as a basis for a cognizable claim under state law.").  Broker Genius' threshold argument lacks any merit.

### 1. The Claim Is Preempted By The Copyright Act

Broker Genius agrees that a claim is preempted if the claim (i) vindicates "legal or equitable rights that are equivalent" to one of the bundle of exclusive rights already protected by copyright law (the "general scope requirement"); and (ii) if the work in question is of the type of works protected by the Copyright Act under 17 U.S.C. §§ 102 and 103 (the "subject matter requirement"). *Barclays Capital Inc. v. Theflyonthewall.com, Inc.*, 650 F.3d 876, 893 (2d Cir. 2011).

Broker Genius ludicrously disputes (BG Mem. at 7) that its copying claim was of "a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.,* 373 F.3d 296, 305 (2d Cir. 2004).  The Terms of Use expressly states that the AutoPricer site and contents were covered by a copyright, so the claim meets the first "general scope" element.

Broker Genius's attempt to dispute the "subject matter" element is equally flimsy.  Broker Genius mischaracterizes its misappropriation claim, writing that its involved only the ***taking*** of "the extensive and expensive investment Broker Genius made in the development of a valuable idea and functionality." (BG Mem. at 7).  However, its claim was based on the later reproduction in Command Center.  Such an argument to avoid preemption is the same one rejected in *Woolcott v.*

4

*Baratta*, where the court recognized that the misappropriation claim was not based on defendants' ***taking*** of the items, but its later ***reproduction***. *Woolcott v. Baratta*, No. 13-CV-2964 JS GRB, 2014 WL 1814130, at *10 (E.D.N.Y. May 7, 2014) ("Woolcott's 'conversion' claim is one of wrongful use or reproduction, not one of wrongful physical possession, and it is therefore not qualitatively different than her copyright claim."); *Atrium Grp. De Ediciones Y Publicaciones, S.L. v. Harry N. Abrams, Inc.,* 565 F.Supp.2d 505, 508 (S.D.N.Y. 2008) (holding that the plaintiff's unjust enrichment and misappropriation of intellectual property claims were preempted by the Copyright Act because the claims "were functionally equivalent to a claim for copyright infringement"); *Wolo Mfg. Corp. v. ABC Corp.*, 349 F. Supp. 3d 176, 212–13 (E.D.N.Y. 2018) ("its state law claims for misappropriation, unfair competition and unjust enrichment pertaining to defendants' purportedly unauthorized use of plaintiff's sound recordings, *i.e.*, their 'posting' of the sound recordings on their websites, 'assert[ ] rights equivalent to those protected within the general scope" of the Copyright Act[,]' and, thus, are preempted by the Copyright Act.")(citations omitted). Because the claim pertained to Defendants' reproduction of the allegedly misappropriated items, the claim is squarely within the ambit of the copyright preemption.

Broker Genius' effort to challenge the Patent Act preclusion similarly misses the mark. Broker Genius argues that preemption applies only to "unpatented features not in the public domain." (BG Mem. at 12), citing *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 330 (E.D.N.Y. Mar. 28, 2014). However, this again ignores that the items presented to the jury were items that were in the public domain either by the fact that the Terms of Use do not restrict the features, because Broker Genius demonstrated the products to users without any restrictions, or because they were disclosed in the patent application.

### a) Broker Genius' Attempt To Invoke the "Free Riding/Hot News" Exception Cannot Be Credited

Having no legitimate basis for disputing that its claim falls within the ambit of the Copyright and Patent Acts, Broker Genius argues that "free riding" constitutes an additional element to change the character of the claim. "These cases clarify that a party's free-riding is an extra element that saves a claim from preemption by the Copyright Act." (BG Mem. at 9). The Second Circuit has advised that courts must "take a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright claim." *Briarpatch*, 373 F.3d at 306. The alleged "free riding" in itself does not constitute an additional element that transforms the claim. "[F]ree-riding...may be a pejorative description of copying, but it is still copying." *Barclays*, at 911 (concurrence), quoting *Lowry's Reports, Inc. v. Legg Mason*, 271 F. Supp. 2d 737, 746-47 (D. Md. 2003) (quoting Jane C. Ginsburg, Copyright, Common Law, and Sui Generis Protection of Databases in the United States and Abroad, 66 U. Cin. L. Rev. 151, 162 (1997). Moreover, Broker Genius ignores the actual definition of "free riding" which requires that the party attempting to pass off its product as the other's work. *Fox News Network, LLC v. TVEyes, Inc.*, 43 F. Supp. 3d 379, 399 (S.D.N.Y. 2014). There is no claim that Seat Scouts attempted to mislead its customers that it was Broker Genius' product.

In the end, Broker Genius apparently reliance on "free riding" is borne of a misreading of this Circuit's decisions in *NBA* and *Barclay* that discussed the "hot news" exception, of which free riding is only one element. The other elements – specifically the copying of instantaneous events – are not at issue. Even the hot news exception is narrow: "The *NBA* panel repeatedly emphasized the 'narrowness' of the 'hot news' tort exception from preemption. See id. at 843, 848, 851, 852 (using the word "narrow" or "narrowness" five times)." *Barclays Capital*, 650 F.3d at 898.

2. **The Existence Of A Contract Cannot Constitute The Additional Element For Preemption, Because It Separately Invokes The "Independent Tort" Bar**

In a final effort to avoid preemption, Broker Genius argues that Gainor obtained access to the technology through a contract, claiming the misappropriation claim "was about enforcing contractual language with meaning independent from the Copyright Act that forbid users from creating derivative products and it was about protecting the extensive and expensive investment Broker Genius made in the development of a valuable idea and functionality." (BG Mem. at 7). However, this frank admission ignores the Defendants' motion (Def. Mem. at 17) that a tort claim seeking to enforce the contractual provision does not constitute an "additional element" foreclosing preemption, it is a further basis for dismissing the claim. Defendants established, the existence of a contract does not constitute an independent element. To the contrary, Defendants showed that the existence of the contract precludes relief on a tort basis[1]. When the plaintiff is seeking enforcement of the bargain the action should proceed under a contract theory.

Broker Genius *literally ignores* the multitude of cases that Defendants' memorandum cited for this proposition, addressing only one. As to that case, *Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*, No. 14 Civ. 9687 (VEC), 2016 WL 4916969, at *9 (S.D.N.Y. Feb. 11, 2016), Broker Genius misrepresents it as allowing a misappropriation claim to proceed even when there was a contract, so long as "[the defendant] discovered the trade secret and confidential information by improper means and bad faith." (BG Mem. at 15). In fact, the court held exactly the opposite, accepting the undisputed proposition that the misappropriation of labors, skills, expenditure claim fails when there was a

---

[1] *ScentSational Techs., LLC v. PepsiCo, Inc.*, No. 13 Civ. 8645 (KMK), 2017 WL 4403308, at *18 (S.D.N.Y. Oct. 2, 2017) (granting motion for summary judgment where unfair competition claim was premised solely on defendants' breach of confidentiality agreements) *Bancorp Servs., LLC*, 2016 WL 4916969, at *9 (dismissing unfair competition claim where it was "entirely based on alleged conduct that is proscribed by the 2010 NDA.").

contractual relationship, and therefore dismissed Bancorp's misappropriation claim on that basis. *Id*. (dismissing unfair competition claim where it was "entirely based on alleged conduct that is proscribed by the 2010 NDA."). The court only allowed Bancorp's subsidiary, Addle Management, to proceed on a misappropriation theory in the ***alternative*** because there was a dispute whether Addle was a third-party beneficiary of its parent, Bancorp's, contract. The misappropriation claim would survive only if there was no contract.

C.  **BROKER GENIUS' ATTEMPT TO DISPUTE THAT IT HAS NO PROPRIETARY INTEREST IS CONTRARY TO THIS COURT'S RULINGS**

Both the unfair competition and contract claims fail as Broker Genius disputes that its misappropriation claim failed because AutoPricer's features are in the public domain (BG Mem. at 13). It argues that the misappropriation claim for skill, labor and expenditures is a separate doctrine from the misappropriation of a trade secret strand. On page 13 it cites *Yantha v. Omni Childhood Ctr., Inc.*, 13-CV-1948 (ARR)(JMA), 2013 U.S. Dist. LEXIS 134940, at *16-17 (E.D.N.Y. Sept. 20, 2013) and *Demetriades v. Kaufmann*, 698 F. Supp. 521, 526-27 (S.D.N.Y. Oct. 27, 1988) for the proposition that a person may have a property "interest in their labor, skill, expenditure, name, and reputation," but its citation to *Big Vision Private, Ltd. v. E.I. DuPont de Nemours & Co.*, 610 Fed. Appx. 69, 71 (2d Cir. 2015) ignores its express statement that misappropriation must be a "commercial advantage *which belonged exclusively to him*" (emphasis added), quoting *LoPresti v. Mass. Mut. Life Ins. Co.*, 820 N.Y.S.2d 275, 277 (2d Dep't 2006). The Court of Appeals has stated that this phrase "commercial advantage" when cited in the misappropriation theory means a "property" interest. *ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 478, 880 N.E.2d 852, 859 (2007).

Broker Genius further ignores the decision that the property interest is lost once a user has "placed his or her goods into the public domain, and whatever abstract property interest may previously have been asserted in the home's features is lost." *Demetriades* at 527. Broker Genius

8

seeks escape this part of the *Demetriades* decision by arguing that it is speaking only to the trade secret misappropriation claim, not the "labor, skill and expenditure" branch. The argument is half-hearted, as it fails to address that the most recent holding of the New York courts, *Schroeder*, which expressly cited this requirement for the misappropriation of labor, skill and expenditure claim:

> Like the other misappropriation causes of action, this claim cannot be premised upon misappropriation of publicly-available information (see e.g. Demetriades v Kaufmann, 698 F Supp 521, 526-527 [SD NY 1988]).

*Schroeder v. Pinterest Inc.,* 133 A.D.3d 12, 31 n. 11, 17 N.Y.S.3d 678, 693 n. 11 (1st Dep't 2015) (emphasis added). The rule that any property interest is lost when an item is in the public domain follows from the requirement that the labor, skills and expenditures must result in a

Despite this case being dispositive on the legal element, Broker Genius' memorandum ***never addresses*** the explicit requirement stated in the footnote, seeking to avoid its lack of answer with a statement that the issue has already been briefed on several occasions. See BG Mem. at 13.

Implicitly acknowledging the requirement, Broker Genius tries to draw a further distinction between information being "publicly-available" and the Court's ruling that the "software architecture, UX/UI, and scalability solutions" are not private and "destroy" any secrecy. *Broker Genius, Inc. v. Zalta*, 280 F.Supp.3d 480, 520 (S.D.N.Y. 2017). Against this Court's holding, Broker Genius attempts sophistry, arguing that "[a]lthough there may have been no confidentiality provision for purposes of trade secret protection, clearly there were limitations as only users could access the entire platform and only after assenting to the Terms of Use." (BG Mem. at 14). That attempted parsing is insufficient, as it accepts that the users are given access without restrictions in the public domain.

Moreover, on a factual basis, the Broker Genius acknowledged that the user interface and user experience. Sherman Tr. 261. The features allegedly copied were disclosed to the public. Sherman Tr. at 135, 139 (ticket group functionality is disclosed); Sherman Tr. 143-144 (the cycle times were

9

disclosed to customers, including Gainor, without any contractual restrictions); Sherman Tr. at 133-134 ("the steps of the process for creating the rule, going through each of the particular components that we saw in the openings, the event list, the inventory list, interacting with the zone, section, row picking of comparables and the creation of a rule is something that you disclosed freely to any potential users without any restrictions on them to maintain that as confidential").[2]

Broker Genius' failure to address the bad faith element highlights the error in its belated claim that the May 2018 violation of the injunction supplied the bad faith required to support the misappropriation claim. Broker Genius admits the theory was never identified in the Second Amended Complaint. Apart from the pleading failure, the new theory was an insufficient basis for liability, and the evidence and jury instructions allowing this theory created error. A misappropriation claim does not exist against an entity that had no role in obtaining the allegedly misappropriated technology item, and merely because the entity used it. *Schroeder*, 133 A.D.3d at 31, 17 N.Y.S.3d at 693. The Appellate Division dismissed the misappropriation of skills and expenditures claim against Pinterest because even though it used the information, there was no evidence it had "obtained the information in bad faith." *Id.* Here, Seat Scouts did not exist at the time of any misappropriation, so there is no basis for alleging it had obtained the information in bad faith.

Broker Genius also fails to defend the absence of evidence in Seat Scouts and Gainor acquiring access to AutoPricer. First, it admits that it never pleaded the theory that the later use – as opposed

---

[2] Broker Genius' contract claim also requires proprietary technology. License restrictions that restrict the licensee from developing technology that is not private or proprietary is unenforceable. See *Crye Precision LLC v. Duro Textiles, LLC*, 2016 WL 1629343, at *3 (S.D.N.Y. Apr. 22, 2016), 689 Fed. Appx. 104 (2d Cir. 2017).

to acquisition of – the supposedly proprietary technology. See BG Mem. at 15. It never explains why that pleading failure is not fatal. With respect to Seat Scouts' liability on the misappropriation claim, Broker Genius again relies upon the argument that the court should disregard its separate legal status. Next, Broker Genius argues that Seat Scouts has liability for using the information provided by Gainor – as opposed to Seat Scouts' own acquisition -- can suffice to establish a misappropriation claim. *Id*. "Defendants try to portray Seat Scouts as an entirely innocent and distinct entity, separate and apart from any of Gainor's misdeeds" (BG Mem. at 15). But Seat Scouts is a distinct entity, and Broker Genius' prior attempt to disregard its distinct entity status was rejected by the Court. May 14, 2018, dismissing claim to pierce the corporate veil.

Next, Broker Genius makes another argument already rejected by the New York courts, namely that Seat Scouts' use of the allegedly misappropriated work is sufficient to create liability. The *Schroeder* court rejected that theory. *Schroeder*, 133 A.D.3d at 29-30 ("we have rejected the claim that bad faith is established merely because Pinterest may have known that the ideas given to them by Cohen were not his own. Because the complaint fails to sufficiently allege the existence of a fiduciary or confidential relationship, or that Pinterest otherwise obtained the information in bad faith, the misappropriation of skills and expenditures claim cannot stand.")

The First Department in *Schroeder* expressly states that the bad faith in a misappropriation claim must relate to how the information is "obtained," or as stated in *Bancorp*, the "***discovery*** by improper means." *Bancorp*, 2016 WL 4916969, at *9, quoting *Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 273 (S.D.N.Y. 2014) (quoting Restatement (First) of Torts § 757 (1939)), aff'd sub nom. *Big Vision Private Ltd. v. E.I. du Pont de Nemours & Co.*, 610 F. App'x 69 (2d Cir. 2015), accord, *Telecom Int'l Am., Ltd v. AT&T Corp.*, 280 F.3d 175, 197 (2d Cir. 2001). *Bongo Apparel, Inc. v. Iconix Brand Group, Inc.*, 2009 WL 41341 (N.Y. Cty. 2008). Because Seat

Scouts did not exist when Gainor obtained the information from Broker Genius, the claim against it rests solely on the insufficient grounds of using the product.

D.     **BROKER GENIUS' OPPOSITION TO A NEW TRIAL ACKNOWLEDGES THE VARIOUS TRIAL ERRORS THAT PREJUDICED DEFENDANTS**

The preceding paragraph shows that the evidence of Seat Scouts' move from Command Center to Event Watcher in 2018 was irrelevant to showing bad faith. Beyond that evidentiary error, Broker Genius' use of the court's finding multiplied the already severe prejudice by bootstrapping the Court's conclusion of contempt into conclusive evidence that overwhelmed the jury's supposed independent fact:

> That, ladies and gentlemen, is quintessential bad faith. Seat Scouts were held in contempt for violating the preliminary injunction. ***That is Judge Stein's acknowledgement under the law of Seat Scouts' bad faith***.

Munoz Closing Tr. at 1534 (emphasis added). Broker Genius also disingenuously argues that Defendants opened the door to the injunction. (BG Mem. at 17).[3] There is no manner in which the evidence of contempt that the Court permitted Plaintiff to introduce, namely that Defendants offered Event Watcher after a judicial determination in May 2018, could have been introduced without referencing the injunction. And the citation to Exhibit ED is doubly disingenuous, as Plaintiff falsely represented to the court that the exhibit was not in evidence, a false claim the court credited over Defendants' correct citation that it had been introduced during Sherman's testimony. Tr. 1479. This was just one of the examples in which Plaintiff's counsel falsely represented facts to the court without repercussions. See e.g., Tr. at 43 (Melman falsely claiming Plaintiff had searched

---

[3] Broker Genius argues that Defendants could not rebut the issue on the facts because those were the "facts as they stand." (BG Mem. at 18). That ignores the ruling that *prohibited* Defendants from presenting the relevant facts about the issue. Tr. at 741-42 ("I'm not going to allow the Netburn order in. I think it's adequate the way it is.") Broker Genius cannot claim that the facts were fairly adjudicated when the jury was denied the evidence to judge the issue fairly.

preliminary injunction transcript and found no reference to Jay Cobb.)

### 1.   The Court Conveyed To The Jury Its Own View Of Witness Credibility And Critical Evidence

Broker Genius' opposition does not dispute the importance of the court's questioning during a jury trial, and therefore the restrictions on the court's involvement. As a result, it seeks to portrays the court's questions as "occasional clarifying questioning." (BG Mem. at 18). Broker Genius' characterization does not stand up to the actual record. The court itself acknowledged its character and purpose: "I was expressing my view that he was toying with the questioner, yes." Tr. at 742-743. There also was no need for the court to clarify, as the interjections occurred within minutes of Gainor taking the stand, and addressed prior testimony already fixed in a transcript. Broker Genius never explains that the statements/questions cut-off Gainor's attempted explanations, and steered Gainor away from explanations.

Recognizing the true character of this intervention, Broker Genius argues that it perhaps falls within the Court's authority to manage testimony, "[t]he Court posed these questions after an evasive witness repeatedly failed to provide a straightforward answer, denying the jury its ability to glean essential facts regarding Defendant Gainor and his knowledge of software." (BG Mem. at 20). This explanation also does not fit the record, for the court's statement were not an attempt to focus the witness' *current* testimony – the testimony at issue was in a deposition that could not be altered. Similarly, Broker Genius' explanation for the court's pointed statements about Gainor being under oath as merely being a benign reminder to "clarify whether Defendant Gainor had testified under oath during his deposition and whether he was aware he was testifying under oath during his trial testimony" (BG Mem. at 21) does not stand up. The court's statement was not solely about the deposition, but juxtaposed it with the same question about his trial testimony, conveyed the view that one of the statements violated the oath. Finally, Broker Genius cites a passage from *Care Travel Co.*

13

*v. Pan Am. World Airways*, 944 F.2d 983, 991 (2d Cir. 1991), in which the court explained its questioning to the jury when "things were not entirely clear to me and I felt they might not be entirely clear to you" (BG Mem at 22, quoting *Care Travel* at 993 n. 4). Here, however, the court itself acknowledged its purpose to "express" its view of Gainor's evasiveness to the jury. An attempted curative instruction that addressed the questioning did not ring true to the actual purpose of the questioning. Combined with the Court's other expressions introduced via the injunction and the contempt (which Broker Genius read into the record), the curative rang hollow.

Broker Genius also weakly attempts to excuse the court's unequal treatment of other main witness. For example, in contrast with its criticism of Gainor for perceived evasiveness, the court chose to bolster Koskinen's evasiveness over his compensation, calling it "fine," and in fact, normal: "What they say about computer scientists is true." (Tr. at 477-479). Broker Genius also does not address the court's decision to preclude examination about Koskinen's failure to conduct a reasonable investigation, precluding basic questions showing Koskinen's failure to review relevant evidence. Tr. 482-483. Broker Genius claims the court was correct in chastising Nitze for her answers. See, e.g., Nitze Tr. 1262, 1269-70, 1319. The court's admonition to confine answers to "yes or no" was in contrast with Plaintiff's witnesses, who labored under no comparable restrictions, even when they refused to answer question that specifically asked to answer yes or no answers. *E.g.*, Koskinen Tr. 462-463, 521; Sherman Tr. 199.

E.  **THE JURY'S AWARD OF DAMAGES WAS EXCESSIVE AND NOT BASED ON THE EVIDENCE**

Broker Genius' attempt to explain the differing verdicts for the same injury, the $3 million on the contract claim, and a separate $1.5 for the unfair competition claim, demonstrates the verdict was without basis. Broker Genius recites the mantra that "two claims with distinct legal elements and supporting facts," and imagines "two sets of damages." (BG Mem. at 24). It then argues that the

14

jury may have been awarding "avoided costs" damages on the misappropriation claim, that Seat Scouts avoided expenses by allegedly using Broker Genius' investment. However, the Court of Appeals has held that avoided costs are not available on the misappropriation claim. See *E.J. Brooks Co. v. Cambridge Security Seals*, 2018 NY Slip Op 03171 (2018)("A plaintiff therefore may not elect to measure its damages by the defendant's avoided costs in lieu of its own losses.") This merely confirms that the jury's verdict, untethered to any evidence by trial evidence, was pulled out of the air. Crucially, Broker Genius admits that it sought compensation for "price erosion injury would continue in perpetuity – that along with loss of goodwill causes Broker Genius irreparable harm." (BG Mem. at 24, citing Tr. at 1138:2-1139:5). Broker Genius also does not dispute that the jury awarded an amount "award an amount that fully compensated Broker Genius for future damages, including future damages for loss of goodwill and other items such as price erosion." (BG Mem. at 24). The jury awarded compensation for this future injury, as the verdict exceeded by a multiple of three and a half times Broker Genius' actual damages of $898,706. This flies in the face of the Court's entry of a permanent injunction to prevent future price erosion and loss of goodwill. (ECF No. 387 at 2)(citing "price erosion, loss of goodwill, damage to its reputation, and loss of business opportunities.") Dell never sought nor quantified the future injury beyond the $898,706 for the current injury.

Finally, the jury awarded future injury due to these components, so by definition the injury was reparable.

### III. CONCLUSION

Plaintiff's claims are insufficient and judgment should be entered for Defendants. Alternatively, the judgment should be vacated and a new trial ordered.

Dated: New York, New York
March 12, 2019

                HINCKLEY & HEISENBERG LLP

              By: *Christoph Heisenberg* (signature)
                Christoph Heisenberg

              880 Third Avenue, Suite 13
              New York, New York 10028
              Phone: (212) 845-9094