

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------
Broker Genius Inc.,

                            Plaintiff,

     -against-

Seat Scouts LLC and Drew Gainor,

                          Defendants.

17-Cv-8627 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

      On November 7, 2017, plaintiff Broker Genius Inc. ("Broker Genius") commenced this action against defendants Seat Scouts LLC ("Seat Scouts") and Drew Gainor, among others, for monetary damages and injunctive relief. After discovery proceedings, motion practice, and a five-day fact hearing, the Court granted a preliminary injunction against defendants on May 11, 2018.[1] (Doc. 119.) After additional proceedings including another fact hearing, the Court entered an order of contempt against Seat Scouts and Drew Gainor on August 24, 2018 for violating the preliminary injunction. (Doc. 209.) The Court reserved judgment on the amount of sanctions to be imposed until after the trial on the merits.

      A ten-day jury trial was held in January 2019, at the conclusion of which the jury awarded damages of $3,000,000 against Drew Gainor on plaintiff's breach of contract claim and $1,500,000 against Seat Scouts and Drew Gainor on plaintiff's unfair competition claim. A judgment to that effect was entered on January 22, 2019 in favor of Broker Genius. (Doc. 353.) The Court then issued a permanent injunction against Seat Scouts and Drew Gainor on February 7, 2019. (Doc. 387.)

      For the reasons that follow, the Court will award civil contempt sanctions in the amount of the costs and attorneys' fees that plaintiff incurred in order to prosecute its Motion for Contempt and Sanctions.

---

[1] At the time the preliminary injunction was issued, Guinio Volpone, Ray Volpone, Stuart Gainor, Volpone Software LLC, and Event Ticket Sales LLC were also defendants in this action. They were all dismissed from this case in the Court's subsequent partial grant of defendants' motion to dismiss plaintiff's Second Amended Complaint on May 14, 2018. *Broker Genius v. Seat Scouts*, No. 17-cv-8627, 2018 WL 2214708 (S.D.N.Y. May 14, 2018).

## I. BACKGROUND

The Court assumes familiarity with the facts underlying this litigation, which are more fully set forth in *Broker Genius v. Volpone*, 313 F. Supp. 3d 484, 511 (S.D.N.Y. 2018). Briefly stated, plaintiff Broker Genius is a technology company serving ticket brokers on the secondary ticket market. Broker Genius's product, AutoPricerV3, is a web application that enables brokers to dynamically and automatically price their inventory of tickets. Defendant Drew Gainor, a former Broker Genius customer, is the cofounder of defendant Seat Scouts, whose Command Center product competes with Broker Genius's product. Broker Genius sued Gainor, Seat Scouts, and others, alleging that Gainor improperly used the knowledge and information he gained while he was a Broker Genius customer to develop Command Center in violation of the Terms of Use to which he agreed before using AutoPricerV3.

As referenced above, plaintiff moved for an order holding Seat Scouts and Drew Gainor in contempt of the preliminary injunction and imposing sanctions on June 7, 2018. (Doc. 136.) The preliminary injunction enjoined defendants from, among other things, "using or providing or making available, whether by sale or otherwise, to any third party the Command Center video, product, and services" during the pendency of the action. *Volpone*, 313 F. Supp. 3d at 511. In its Motion for Contempt and Sanctions, plaintiff claimed that, days after the preliminary injunction issued, defendants began marketing a new product called Event Watcher, which was identical to Command Center and therefore violated the preliminary injunction. (Doc. 137.)

On August 24, 2018, following a one-day fact hearing, the Court held defendants in contempt of the preliminary injunction. Specifically, the Court found that the testimony at the fact hearing established that "Event Watcher is Command Center with the automatic pricing function detached, and that the Seat Scouts product was optimized to enable its users to add easily the automatic pricing capability themselves, and that the defendants took active steps to encourage their customers to do so." (Doc. 213, Contempt Decision tr. at 4.) Indeed, the Court found that Event Watcher was "simply a doppelganger of the enjoined Command Center." *Id.* at 11.

The Court held that plaintiff is entitled to compensatory sanctions as a result of defendants' conduct. *Id.* at 13. Since the Court "ha[d] no evidence with respect to what damages Broker Genius has suffered as a result of defendants' contempt," the Court invited the parties to "make additional submissions on that subject" or to attempt to reach an agreed-upon amount. *Id.* at 14. Plaintiff and defendants each submitted memoranda addressing the amount of sanctions that should be awarded on September 24, 2018. (Docs. 227, 229.) The Court reserved judgment on the amount of sanctions to award until after the trial on the merits.

Following a ten-day trial, the jury returned a verdict in favor of Broker Genius, awarding $3,000,000 against Drew Gainor on plaintiff's breach of contract claim and $1,500,000 against Seat Scouts and Drew Gainor on plaintiff's unfair competition claim. (Doc. 353.) Plaintiff subsequently renewed its request that the Court award compensatory sanctions. (Doc. 393.)

## II. LEGAL STANDARD

"Civil sanctions have two purposes: to coerce compliance with a court order and to compensate a plaintiff." *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 101 (2d Cir. 2016). Civil contempt sanctions must be "remedial and compensatory" rather than punitive. *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 296 (S.D.N.Y. 2000); *accord Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5 (2d Cir. 1989).

The Second Circuit has instructed district courts to weigh the following factors in determining whether to impose coercive sanctions: "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon him." *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 110 (2d Cir. 1987). The Court weighed these factors and concluded that coercive sanctions were not warranted because "[t]he Court believes that defendants will comply with the preliminary injunction going forward." Contempt decision tr. at 14.

The Court will instead award purely compensatory sanctions. *Id.* A "district court is not free to exercise its discretion and withhold an order in civil contempt awarding damages, to the extent they are established." *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979). Compensatory sanctions are meant to "make reparation to the injured party and restore the parties to the position they would have held had the injunction been obeyed." *Merriweather v. Sherwood*, 250 F. Supp. 2d 391, 394–95 (S.D.N.Y. 2003) (quoting *Carousel Handbags*, 592 F.2d at 130). Accordingly, the amount of compensatory sanctions awarded must be "calibrat[ed] . . . to the actual injuries inflicted on the victims of the contumacious conduct." *New York State Nat. Org. for Women v. Terry*, 159 F.3d 86, 94 (2d Cir. 1998). "To prove these damages, the moving party must demonstrate a causal connection between the contemnor's contemptuous behavior and the alleged damages." *Grand v. Schwarz*, No. 15-cv-8779, 2018 WL 4026735, at *2 (S.D.N.Y. Aug. 23, 2018); *see U2 Home Entm't, Inc. v. Hong Wei Int'l Trading, Inc.*, No. 02-cv-5828, 2005 WL 3766976, at *7 (S.D.N.Y. May 3, 2005); *Lavatec Laundry Tech. GmbH v. Voss Laundry Sols.*, No. 13-cv-00056, 2018 WL 2426655, at *13 (D. Conn. Jan. 9, 2018).

In the context of compensatory civil contempt sanctions, the movant's lost profits are an appropriate measure of actual damages so long as they can be traced back to the contemnor's contemptuous actions. *E.g., Grand*, 2018 WL 4026735 at *3, *Upjohn Co. v.*

*Medtron Laboratories, Inc.*, 894 F. Supp. 126, 135 (S.D.N.Y. 1995). When a movant fails to make an adequate showing of its actual damages, however, courts may instead award the profits that the contemnor derived from its violation of the court order as compensatory relief. *Sweater Bee*, 885 F.2d at 6 ("[P]rofits derived by the contemnor from violation of a court order . . . are an equivalent or a substitute for legal damages, when damages have not been shown, and are recoverable not by way of punishment but to insure full compensation to the party injured.") (quotations omitted).

Courts have also awarded costs and attorneys' fees as a compensatory sanctions award. *See Herbalist & Alchemist, Inc. v. Alurent Prods., Inc.*, No. 16-cv-9204, 2018 WL 3329857 (S.D.N.Y. Jul. 5, 2018); *Forschner Group, Inc. v. Arrow Trading Co.*, No. 92-cv-6953, 1998 WL 879710 (S.D.N.Y. Dec. 15, 1998). "Since the plaintiff should be made whole for the harm he has suffered, it is appropriate for the court also to award the reasonable costs of prosecuting the contempt, including attorneys' fees, if the violation of the decree is found to have been willful." *Carousel Handbags*, 592 F.2d at 130; *see Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996) (noting that the district court "may award appropriate attorney fees and costs to a victim of contempt" when awarding sanctions for civil contempt).

### III. DISCUSSION

Plaintiff seeks compensatory damages in the amount of the profits it lost due to defendants' contemptuous conduct. (Doc. 227, Pl.'s Mem. at 12.) Defendants originally argued that because Broker Genius has not provided enough evidence to prove that it lost profits as a result of Event Watcher's presence on the market, the only appropriate compensatory damages award would be the profits that Seat Scouts derived from Event Watcher. (Doc. 229, Def.'s Mem. at 4–5.) Acknowledging that Seat Scouts had no net profits between May 11, 2018 and August 24, 2018, defendants proposed that the Court award a percentage of its revenue from that time period. *Id.* at 5.

Following trial, however, defendants argue that because the jury's award included lost profits from the period for which they were held in contempt, "any separate award would be duplicative and punitive, not compensatory." (Doc. 394 at 2–3.) Plaintiff contests this characterization, arguing that defendants are "improperly conflat[ing] the damages awarded by the jury with the compensatory *sanctions* to be awarded against Defendants." (Doc. 396 at 3.) Plaintiff also claims it is entitled to the "costs to the company to prove up contempt." *Id.*

Because awarding sanctions in the amount of the profits Broker Genius lost or the profits Seat Scouts gained from Event Watcher during the period of contempt could constitute double recovery for Broker Genius, the Court will not award either of these amounts. Instead, the Court will award sanctions in the amount of the costs and

4

attorneys' fees that Broker Genius incurred in prosecuting its Motion for Contempt and Sanctions.

### A. Awarding Lost Profits Could Constitute Double Recovery for Broker Genius.

At trial, Broker Genius's expert witness Stephen Dell testified about the profits Broker Genius lost as a result of Event Watcher's presence on the market from May 2018 to August 2018 in violation of the preliminary injunction. *E.g.*, trial tr. at 1110, 1133. Neither plaintiff nor defendants argued to the jury that the jury's damages award should be confined to the profits Broker Genius lost as a result of Command Center. Therefore, the jury's damages award could have included the profits Broker Genius lost as a result of Event Watcher as well as Command Center. The lost profits damages that Broker Genius seeks as compensatory sanctions could therefore duplicate the portion of the jury's award that represents the lost profits traceable to Event Watcher.

Lost profits awarded as compensatory sanctions are not conceptually separate from lost profits awarded as damages for liability on the merits of a particular claim. *See Rudd v. Advance Bedding Corp.*, No. 87-cv-5773, 1997 WL 104683 (E.D.N.Y. Feb. 20, 1997) (declining to award compensatory sanctions in the total amount of the prior judgment issued against a defendant who was held in contempt of the court's prior temporary restraining order due to double recovery concerns); *Toyo Tire & Rubber Co. v. Doublestar Dong Feng Tyre Co.*, No. 15-cv-246, 2018 WL 3203421 (C.D. Cal. Jun. 26, 2018) (granting defendants' motion for partial summary judgment to avoid "double recovery and an impermissible windfall" because plaintiff had already recovered for the damages stemming from the defendants' misconduct through a contempt motion in a prior action). If the Court were to award Broker Genius's lost profits as compensatory sanctions, that award would impermissibly overlap with the portion of the jury's award that represents the profits Broker Genius lost due to Event Watcher's presence on the market.

Awarding a percentage of Seat Scouts' revenue as compensatory sanctions, as defendants originally proposed, would run afoul of the same double recovery problem.[2] It is clear that using the contemnor's ill-gotten profits as a measure of compensatory sanctions is a "substitute" for the movant's lost profits in situations where lost profits were not proven with sufficient certainty. *Sweater Bee*, 885 F.2d at 6 ("[P]rofits derived by the contemnor from violation of a court order . . . are an equivalent or a substitute for legal damages, when damages have not been shown") (quotations omitted). The Court will not grant plaintiff an impermissible windfall by twice awarding damages in the form of the profits Broker Genius lost or the profits Seat Scouts realized as a result of Event Watcher's presence on the market.

---

[2] Furthermore, defendants cite no authority suggesting that the contemnor's revenue, as opposed to profits, is an appropriate means of calculating compensatory sanctions.

5

## B. The Court Will Award Broker Genius's Costs and Fees Incurred While Prosecuting Its Motion for Contempt and Sanctions.

It is "appropriate" for the Court to include in its compensatory sanctions award "the reasonable costs of prosecuting the contempt, including attorneys' fees, if the violation of the decree is found to have been willful."[3] *Carousel Handbags*, 592 F.2d at 130. Plaintiff is awarded the costs and attorneys' fees it incurred in the course of prosecuting its Motion for Contempt and Sanctions. Plaintiff is directed to submit that calculation, with support, within ten days of this order; defendants may respond within ten days thereafter.

Dated: New York, New York
June 12, 2019

SO ORDERED:

Sidney H. Stein, U.S.D.J.

---

[3] The Second Circuit has since commented that "[w]e express no opinion [on the claim] that a finding of willfulness or bad faith is required before a court may order attorneys' fees as a sanction for violating a court order, and note that the issue appears to remain an open one in our Circuit." *Jacobs v. Citibank, N.A.*, 318 F. App'x 3, 5 n.3 (2d Cir. 2008); *see also Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996) ("[W]hile willfulness may not necessarily be a prerequisite to an award of fees and costs, a finding of willfulness strongly supports granting them.").

Regardless, the findings that the Court made in concluding that defendants' Motion for Clarification, seeking clarification as to whether Event Watcher was permitted by the preliminary injunction, was "not a reasonably diligent attempt to comply with the preliminary injunction" are sufficient to establish the defendants' willfulness. Contempt decision tr. at 9. "In order to establish willful contempt, it must be shown that the contemnor had actual notice of the court's order, was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply." *Leadsinger, Inc. v. Cole*, No. 05-cv-5606, 2006 WL 2266312, at *18 (S.D.N.Y. Aug. 4, 2006) (internal quotations omitted). The Court found that defendants' Motion for Clarification did not constitute a "reasonably diligent attempt to comply with the preliminary injunction" because defendants filed it after Seat Scouts had already made Event Watcher available to the public; they were not forthright in their description of Event Watcher; and they refused to provide plaintiff's attorneys with access to Event Watcher until briefing had concluded. Contempt decision tr. at 9–12. This motion was the only evidence that defendants presented to demonstrate that they had attempted to comply with the preliminary injunction. *Id.* at 12.