UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BROKER GENIUS INC.,

                Plaintiff,

      v.

SEAT SCOUTS LLC AND
DREW GAINOR,

                Defendants.

17-Cv-8627 (SHS)

OPINION & ORDER

---

SIDNEY H. STEIN, U.S. District Judge.

    On June 13, 2019, the Court awarded plaintiff Broker Genius civil contempt sanctions in the amount of the costs and attorneys' fees Broker Genius incurred in the course of successfully prosecuting its Motion for Contempt and Sanctions. The Court directed plaintiff to submit its calculation of that amount, with supporting documentation, and provided defendants Seat Scouts and Drew Gainor with the opportunity to respond.

    Having received both plaintiff's request for $326,764.79 in attorneys' fees, $35,662.47 in expert fees, and $15,641.21 in costs, as well as defendants' response, the Court now awards Broker Genius $228,735.35 in attorneys' fees, $35,662.47 in expert fees, and $15,641.21 in costs, for a total of $280,039.03 as civil contempt sanctions. This represents a thirty percent across-the-board reduction of the attorneys' fees that plaintiff sought in order to account for the fact that many of plaintiff's time entries contain descriptions of work unrelated to the Motion for Contempt and Sanctions or are impermissibly vague.

## I. BACKGROUND

    In November 2017, Broker Genius commenced this action against Seat Scouts and Drew Gainor, among others, for monetary damages and injunctive relief. After extensive and contested discovery proceedings, motion practice, and a five-day fact hearing, the Court granted a preliminary injunction against defendants on May 11, 2018. *Broker Genius, Inc. v. Volpone*, 313 F. Supp. 3d 484 (S.D.N.Y. 2018). After additional proceedings including a second fact hearing, the Court entered an order of contempt against Seat Scouts and Drew Gainor on August 24, 2018 for violating the preliminary injunction. [Doc. #209.] The Court reserved judgment on the amount of sanctions to be imposed until after the trial on the merits.

    A ten-day jury trial was held in January 2019, at the conclusion of which the jury awarded damages of $3,000,000 against Drew Gainor on plaintiff's breach of contract

claim and $1,500,000 against Seat Scouts and Drew Gainor on plaintiff's unfair competition claim. A judgment to that effect was entered on January 22, 2019 in favor of Broker Genius. [Doc. #353.] The Court then issued a permanent injunction against Seat Scouts and Drew Gainor. [Doc. #387.]

The Court subsequently issued an opinion awarding civil contempt sanctions in the amount of the costs and attorneys' fees that plaintiff incurred in prosecuting its Motion for Contempt and Sanctions. *Broker Genius Inc. v. Seat Scouts LLC,* 17-Cv-8627, 2019 WL 2462333 (S.D.N.Y. Jun. 13, 2019). Plaintiff submitted its calculation of that amount, totaling $378,068.47, on July 1, 2019. Defendants oppose the award of this amount, arguing that "the lack of required evidentiary sponsoring explanation warrants a denial of the application." Defs.' Opp. at 1. At a minimum, defendants contend, the inclusion of "excessive and duplicative" work warrants a forty percent reduction of the total amount of fees and costs claimed. *Id.*

## II. LEGAL STANDARD

"Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). "Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming the fat from a fee application." *Id.* (internal citations omitted); *see Adorno v. Port Auth. of N.Y. & N.J.*, 685 F. Supp. 2d 507, 515 (S.D.N.Y. 2010) (accounting for "excessive, redundant, and unnecessary hours" by making a "percentage reduction" from the total number of hours claimed).

Courts have also made percentage reductions from the total amount of fees claimed when the attorneys used "block-billing" to record their time. "Block-billing" is the practice of aggregating multiple tasks into one billing entry rather than separating out the time into distinct entries that describe specific activities. *Sea Spray Holdings v. Pali Fin. Grp.*, 277 F. Supp. 2d 323, 325 n.3 (S.D.N.Y. 2003); *Wise v. Kelly*, 620 F. Supp. 2d 435, 450 (S.D.N.Y. 2008). Aggregating different tasks into a single billing entry makes it difficult for a court to determine the reasonableness of the number of hours billed, since the court will not be able to tease out what time was devoted to what task. *Wise*, 620 F. Supp. 2d at 450. For this reason, courts faced with the "inherent difficulties [involved in] attempting to parse out reasonable hours and manpower for appropriate tasks" from time records using block-billing have the discretion simply to reduce the fees claimed by a flat percentage. *Sea Spray Holdings*, 277 F. Supp. 2d at 326; *see Green v. City of N.Y.*, 402 F. App'x 626, 630 (2d Cir. 2010).

Courts have also found it appropriate to make percentage reductions to the total amount of attorneys' fees claimed when it is impossible to ascertain whether the time expended was reasonable due to overly vague time entries. *See Kirsch*, 148 F.3d at 172; *Andrews v. City of N.Y.*, 118 F. Supp. 3d 630, 644 (S.D.N.Y. 2015).

### III. ANALYSIS

#### A. The Court Reduces Plaintiff's Attorneys' Fees Calculation by Thirty Percent To Account for the Inclusion of Work Unrelated to the Contempt Motion, Vague Time Entries, and Block-Billing.

Defendants first argue that there is no evidence that the time records Broker Genius submitted in support of its fee request were contemporaneously created.[1] Defendants also urge that plaintiff's time records "show[] pervasive block-billing and vague entries" justifying an "across-the-board cut of 20 percent." Defs.' Opp. at 4. Finally, defendants contend that plaintiff's records reflect "grotesque duplicative work performed by [plaintiff's] attorneys," as well as work related to non-contempt issues, warranting a further reduction. *Id*. Defendants do not contest the reasonableness of plaintiff's attorneys' hourly rates.

Broker Genius has clearly established that the time records were created contemporaneously. The Declaration of Daniel Melman, filed in response to the Court's Order dated August 6, 2019, attests to the contemporaneous nature of the time entries, explaining that "[a]t or near the time work is completed, attorneys and other staff are directed to enter the date, the hours expended, and the nature of the work done either directly into the time-keeping software or by using a third-party application." Melman Decl. ¶ 4. The attorneys then "transfer[] their time to [a] software platform by the end of the month" and these time entries are subsequently used to generate the invoices sent to clients. *Id*.

The Melman Declaration establishes that the relevant time entries were recorded at or near the time the work was expended. For purposes of this motion, the time entries were then pulled directly from the invoices the attorneys sent to Broker Genius (Exhibit B) and set forth on a spreadsheet (Exhibit A) in order to calculate the total attorneys' fee. *See* Exs. A & B to Benowich Decl.; Melman Decl. ¶¶ 6–7. The Court therefore finds that plaintiff complied with the Second Circuit's requirement that fee applications be accompanied by contemporaneous time records. *See U.S. Bank Trust, N.A. v. Dingman*,

---

[1] Although defendants also question whether Broker Genius has actually paid the bills that plaintiff attached as Exhibit B to the Declaration of Sarah Benowich, plaintiff confirms in its Reply brief that Broker Genius has paid these bills.

No. 16-Cv-1384, 2016 WL 6902480 (S.D.N.Y. Nov. 22, 2016) (citing *N.Y. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983)); *Andrews*, 118 F. Supp. 3d at 638.

Defendants are correct, however, that the time records are riddled with work related to non-contempt issues, block-billing, and vague entries. Perhaps most glaring are the numerous time entries describing work that is unrelated to plaintiff's Motion for Contempt and Sanctions. For example, Nathan Renov's time entries for June 3 and 4 reflect that he spent 21 hours for a fee of $7,087.50 reviewing defendants' Answer to plaintiff's Second Amended Complaint; working on plaintiff's memorandum in opposition to defendants' motion to clarify and increase the bond; and working on declarations by James McGowan and Eric Koskinen. Ex. A to Benowich Decl. Certainly, his work reviewing defendants' Answer and his work on Broker Genius's memorandum in opposition to defendants' motion to clarify and raise the bond do not relate to the sanctions motion at issue here. Similarly, Daniel Melman's time entry from June 12 states that he spent 3.2 hours for a fee of $1,440 attending a team meeting regarding the motion for contempt and defendants' motion for clarification, researching "next steps," participating in a call with Broker Genius's board, and drafting plaintiff's motion to dismiss defendants' counterclaims. *Id*. Certainly, work relating to Seat Scouts' motion for clarification and Broker Genius's motion to dismiss Seat Scouts' counterclaims is not compensable here, but the Court cannot determine from this time entry what amount of time *is* compensable.

These are just three examples out of many. *E.g.*, *id*. (Melman's time entries from June 3 and July 13; Veronica Mullally Munoz's time entries from August 13 and 16). The fact that nearly all of plaintiff's attorneys' time entries were written in the "block-billing" style means that the Court cannot separate out the time spent on work related to prosecuting the Motion for Contempt and Sanctions from the other work described in these and other entries. A number of the time entries are so vague that the Court cannot determine whether the work described relates to the Motion for Contempt and Sanctions or something else. For example, Ari Farkas's time entries for June 4 and 5 set forth the following descriptions for 8 hours and 2 hours billed to Broker Genius, respectively:

> 6/4/2018 Meet with JM, call with SS, draft declaration. Doc review and research.
>
> 6/5/2018 Calls with team and team meeting, call with client and review of additional documentation.

*Id*. These are exactly the type of descriptions that courts have found to be impermissibly vague in the context of recovering attorneys' fees. *See, e.g., Kirsch*, 148 F.3d at 172; *Wise*, 620 F. Supp. 2d at 452.

For these reasons, the Court will not award the full amount of attorneys' fees that Broker Genius seeks. Because the pervasive block-billing in plaintiff's attorneys' time

records renders it too difficult to parse out reasonable hours for the tasks that are in fact related solely to plaintiff's Motion for Contempt and Sanctions, the Court finds that a thirty percent reduction of the fees that Broker Genius claims is warranted. *See, e.g.*, *Sea Spray Holdings*, 277 F. Supp. 2d at 326; *Green*, 402 F. App'x at 630. Plaintiff may therefore recover $228,735.35 in attorneys' fees.

### B. The Court Grants Plaintiff's Application for Expert Fees.

Seat Scouts also contests Broker Genius's attempt to recover the fees and expenses of plaintiff's expert witness Dr. Eric Koskinen on the grounds that Broker Genius failed to provide proper support for the expert fees and expenses it claims. In its Reply, plaintiff admits that it inadvertently omitted the invoices for Dr. Koskinen's services from its original submission, even though the invoices were referred to in the Benowich Declaration.

Those invoices, which were submitted as Exhibit 1 to plaintiff's Reply brief, support plaintiff's claim that Koskinen spent 83.71 hours on work related to Broker Genius's Motion for Contempt and Sanctions. The Court finds that this was a reasonable amount of time for him to have spent analyzing the relevant software, preparing declarations, preparing for and participating in his deposition, and preparing for and testifying at the contempt hearing.

Because defendants do not contest Dr. Koskinen's hourly rate of $395, the Court accepts that hourly rate as reasonable and awards Broker Genius $35,662.47 in expert fees.

### C. The Court Grants Plaintiff's Application for Costs.

Finally, plaintiff requests costs in the amount of $15,641.21 "primarily for depositions and transcriptions." Pl.'s Mem. at 3. Because defendants do state any ground on which—or reason why—they oppose this figure, the Court accepts plaintiff's costs calculation.

## IV. CONCLUSION

Due to the inclusion in the time records of (1) work related to non-contempt issues, (2) block-billing, and (3) vague entries, the Court will apply a thirty percent reduction to plaintiff Broker Genius's request for attorneys' fees. Plaintiffs are therefore entitled to attorneys' fees in the amount of $228,735.35; expert fees in the amount of $35,662.47; and costs in the amount of $15,641.21. The Court therefore imposes civil contempt sanctions against defendants in favor of plaintiff in the total amount of $280,039.03.

Dated: New York, New York
August 12, 2019

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.