UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BROKER GENIUS, INC.,

                Plaintiff,

    v.

SEAT SCOUTS LLC AND DREW
GAINOR,

                Defendants.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/27/19-15

17-Cv-8627 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

Before the Court is the motion of defendants Seat Scouts and Drew Gainor to dismiss plaintiff Broker Genius's turnover proceeding for failure to join an indispensable party pursuant to Federal Rules of Civil Procedure 12(b)(7) and 19. The motion arises out of the fact that plaintiff has not sought to join third party Pistol Enterprises, LLC to the action even though plaintiff asks the Court to invalidate a Promissory Note executed by Seat Scouts and Pistol on the theory that that transaction constitutes a fraudulent conveyance. At a hearing on June 19, 2019, the Court determined that Pistol is a necessary party pursuant to Rule 19(a) as the transferee in the alleged fraudulent conveyance. The Court directed the parties to engage in jurisdictional discovery and submit further briefing on the issue of whether Pistol could be joined to this action as a necessary party.

Having received the parties' submissions, the Court now grants defendants' motion on the grounds that it cannot exercise personal jurisdiction over Pistol and that Pistol is an indispensable party. Plaintiff's turnover proceeding is therefore dismissed.

I. BACKGROUND

In November 2017, Broker Genius commenced this action against Seat Scouts and Gainor, among others, for monetary damages and injunctive relief. After extensive and contested discovery proceedings, motion practice, and a five-day fact hearing, the Court granted a preliminary injunction against defendants on May 11, 2018. *Broker Genius, Inc. v. Volpone*, 313 F. Supp. 3d 484 (S.D.N.Y. 2018). After additional proceedings including a second fact hearing, the Court entered an order of contempt against Seat Scouts and Gainor on August 24, 2018 for willfully violating the preliminary injunction.

A ten-day jury trial was held in January 2019, at the conclusion of which the jury awarded damages of $3,000,000 against Gainor on plaintiff's breach of contract claim and $1,500,000 against Seat Scouts and Gainor on plaintiff's unfair competition claim. A

judgment to that effect was entered on January 22, 2019 in favor of Broker Genius. The Court then issued a permanent injunction against Seat Scouts and Gainor.

On June 5, 2019, Broker Genius initiated a turnover proceeding pursuant to New York Civil Practice Law and Rules § 5225, seeking a turnover order directing Seat Scouts and Gainor to turn over assets sufficient to satisfy the judgment against them. In its motion, Broker Genius alleged that Seat Scouts had borrowed $500,000 from Pistol in October 2018 in exchange for a security interest in all of Seat Scouts' assets. Broker Genius alleges that that transaction represents a fraudulent conveyance in that Seat Scouts entered into it in order to thwart any judgment that might be entered against Seat Scouts in this litigation.

In connection with the turnover proceeding, Broker Genius moved by an application for an order to show cause for a temporary restraining order and preliminary injunction freezing Seat Scouts' assets and enjoining defendants and those acting in concert with them from taking any steps to transfer those assets, among other things. Broker Genius sought these emergency remedies because Seat Scouts had defaulted on the loan from Pistol and Pistol had initiated a foreclosure proceeding in Nebraska; Seat Scouts did not oppose foreclosure and a default judgment was about to be issued transferring all of Seat Scouts' assets to Pistol.

After a hearing on June 6, 2019, a judge of this court, sitting in Part I, granted Broker Genius's motion for a TRO in part, enjoining defendants and those acting in concert with them "from selling, conveying, transferring, distributing, providing or making available [Seat Scouts'] assets to any other entity or individual;" and "freezing all [of Seat Scouts'] assets." [Doc. #413.] The Court set a briefing schedule and ordered the parties to appear for a hearing on plaintiff's motion for a preliminary injunction on June 19, 2019.

Prior to the preliminary injunction hearing, defendants moved to dismiss the turnover proceeding on a number of grounds, including for failure to join Pistol as a necessary party. The Court subsequently heard argument on defendants' motion at the hearing and ruled that Pistol is, in fact, a necessary party to the turnover action. The Court ordered the parties to submit supplemental briefing on the issue of whether Pistol can be properly joined to the action as a necessary party and whether the Court can exercise personal jurisdiction over Pistol. The Court also allowed jurisdictional discovery, as a result of which Broker Genius took the deposition of Paul Martin, the sole organizer and member of Pistol.

## II. FACTS

Discovery has yielded the following facts: Pistol was established as a Minnesota limited liability company on October 2, 2018, after the entry of the preliminary injunction and finding of contempt in this litigation but before trial on the merits. *See* Ex. 3 to Munoz

Decl. at PISTOL 000011. Pistol's sole organizer and member was Martin, a personal friend of Gainor's. *See id.*; Ex. 2 to Benowich Decl. [hereinafter "Martin Deposition"] at 24-25. Martin testified that Pistol's sole purpose was to make the loan at issue in this litigation. Martin Deposition at 33.

Pistol and Seat Scouts executed the Promissory Note on October 12, 2018. Ex. 2 to Munoz Decl. Pursuant to the terms of the Note, Pistol agreed to loan Seat Scouts $500,000 in exchange for a security interest and lien on all of Seat Scouts' tangible and intangible assets. *Id.* Pistol perfected its security interest, thereby ensuring its priority over any future creditor of Seat Scouts. *See* Ex. 3 to Munoz Decl. at PISTOL 000207.

Broker Genius calls attention to Pistol's legal representation, or lack thereof, in connection with the Promissory Note as evidence of the fraudulent nature of the transaction. Specifically, Broker Genius notes that although Pistol's attorney Steve Schumeister nominally represented Martin and Pistol during negotiations over the Note, Schumeister disclaimed his role in an email to Thomas Drees, a managing director in wealth management at Morgan Stanley. In that email, Schumeister wrote:

> [T]his is to confirm that we have been asked as an accommodation to assist you to a very limited extent in a transaction in which you are assisting Paul Martin and/or Pistol Enterprises LLC to loan money to Seat Scouts LLC. Ultimately I know from our conversation and this is to confirm that Paul [Martin] will be making the decision based upon his relationship with and knowledge of Seat Scouts LLC and its principals. As discussed it is not possible for our firm to assess or provide legal services related to the loan and security or as to Seat Scouts LLC (including not being able to advise as to Seat Scout LLC's assets intellectual property creditors risk of litigation and other matters). Essentially we are asked to merely provide information and our role is really a ministerial or scrivener role as opposed to what an attorney would normally do in connection with a loan. We also advise that the documents provide for jurisdiction and governing law to be that of Nebraska and recommend that a Nebraska attorney be consulted.

*Id.* at PISTOL 000356.

Seat Scouts never made a single payment on the Note. Ex. 6 to Munoz Decl. ¶ 6. Seat Scouts' first payment was due on March 31, 2019, which was after judgment had been entered against it in this case on January 22, 2019 and after the Court entered a permanent injunction against it on February 7, 2019. [Docs. #353, 354.] Approximately one month after Seat Scouts defaulted on the loan, Pistol initiated a foreclosure action against Seat Scouts in Nebraska state court, laying claim to the entirety of the pledged collateral—all of Seat Scouts' assets. Ex. 6 to Munoz Decl. ¶ 18. Seat Scouts did not oppose the foreclosure and a default judgment was entered against it on June 25, 2019. Ex. 1 to

Case 1:17-cv-08627-SHS-SN Document 462 Filed 08/27/19 Page 4 of 11

Heisenberg Decl. Although Pistol notified Broker Genius of the Nebraska foreclosure action on May 8, 2019, the day after the action was initiated, Broker Genius chose not to appear in that proceeding. *See* Ex. 6 to the Munoz Decl.

Because the TRO freezing Seat Scouts' assets was already in place when the default judgment was entered and the Nebraska court made clear that it would decline to issue an order directing the transfer of Seat Scouts' assets until Pistol provided "reasonable proof" that such a transfer would not violate the permanent injunction or the TRO in this litigation, Seat Scouts' assets have not yet, to the Court's knowledge, been transferred to Pistol. *See* Ex. 1 to Heisenberg Decl. ¶ 16. Broker Genius contends that Seat Scouts' assets have depreciated so drastically that, if they are transferred to Pistol pursuant to the Nebraska judgment, there will be no value left after they are sold to satisfy Broker Genius's judgment in this case. Seat Scouts essentially agrees with that position. *See* June 19, 2019 Preliminary Injunction Hearing Tr. [Doc. #437] at 9 ("MR. HEISENBERG: . . . the pleadings in this case . . . that we received suggest that the value of the assets that will be put up for sale by [Pistol] will probably not be sufficient [to pay the judgment in this case]").

### III. PERSONAL JURISDICTION

#### A. Legal Standard

The plaintiff has the burden of establishing that a court has personal jurisdiction over a defendant. *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). In ruling on whether personal jurisdiction exists, "a district court has considerable procedural leeway[:] [i]t may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013).

The showing that a plaintiff must make for a court to conclude that personal jurisdiction exists over a defendant "varies depending on the procedural posture of the litigation." *Id.* "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Id.* After jurisdictional discovery, however, the plaintiff's *prima facie* showing "must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." *Id.* at 85. At that point, the *prima facie* showing must be factually supported. *Id.* As already noted, the parties here have engaged in jurisdictional discovery.

4

Furthermore, a *prima facie* showing of jurisdiction will not suffice where a plaintiff seeks preliminary injunctive relief. *Weitzman v. Stein*, 897 F.2d 653, 659 (2d Cir. 1990).[1] Instead, a plaintiff responding to a jurisdictional challenge in that context must "adequately establish that there is at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits." *Visual Scis., Inc. v. Integrated & Commc'ns Inc.*, 660 F.2d 56, 59 (2d Cir. 1981); *accord Weitzman*, 897 F.2d at 659; *Lam Yeen Leng v. Pinnacle Performance Ltd.*, 474 F. App'x 810, 813–14 (2d Cir. 2012).

The issue of personal jurisdiction in a federal diversity action is governed by the law of the forum state, here, New York. *See, e.g., D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006). Even if the exercise of jurisdiction is appropriate under state law, however, a court must determine whether the exercise of such jurisdiction comports with federal due process requirements. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985); *Ge Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374 (S.D.N.Y. 2013).

### B. Broker Genius Has Not Adequately Established that There Is a Reasonable Probability of Ultimate Success Upon the Question of Personal Jurisdiction.

Broker Genius urges the Court to exercise personal jurisdiction over Pistol pursuant to CPLR § 302(a)(3), which states that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . commits a tortious act without the state causing injury to person or property within the state . . . if he . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."[2]

The tortious act that Broker Genius contends Pistol committed is fraudulent conveyance, alleging two New York state law claims: constructively fraudulent

---

[1] *Weitzman* is procedurally identical to this case. In that case, Weitzman, a judgment creditor of Sidney Stein, brought a turnover proceeding pursuant to CPLR § 5225(b) against Stein and his wife, Beverly Stein, asking the court to vacate Sidney's conveyances to Beverly and compelling Beverly to turn those assets over to Weitzman. *Id.* at 654. Beverly challenged the court's personal jurisdiction against her, but the court found that Weitzman had made a *prima facie* showing of jurisdiction sufficient for the entry of a preliminary injunction against her. *Id.* at 655. However, the U.S. Court of Appeals for the Second Circuit held that a *prima facie* showing of personal jurisdiction was insufficient to permit the entry of a preliminary injunction because "it was not clearly established that the court had jurisdiction over Beverly." *Id.* at 658–59. The Second Circuit vacated the preliminary injunction and remanded for a determination of whether Weitzman had established "at least a reasonable probability of ultimate success on the question of the court's in personam jurisdiction over Beverly." *Id.* at 659. It should be noted that the Sidney Stein in that action has no relationship to this Court.

[2] Broker Genius does not contend that the Court can exercise general personal jurisdiction over Pistol pursuant to CPLR § 301.

5

conveyance pursuant to New York Debtor and Creditor Law (DCL) § 273-a[3] and actually fraudulent conveyance pursuant to DCL § 276.[4] Defendants do not dispute that a cause of action for fraudulent conveyance is a tort. *See Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 898–99 (2d Cir. 1980); *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11-Cv-1590, 2014 WL 3883371, at *6 (S.D.N.Y. Aug. 7, 2014). Defendants argue, however, that Broker Genius has failed to show (1) that Pistol expected or should reasonably have expected the act of lending money to Seat Scouts to have consequences in New York or (2) that Pistol derives substantial revenue from interstate or international commerce. The Court agrees with defendants as to the first and accordingly does not reach the second.

### 1. The Record Does Not Contain Any Evidence that Pistol Expected or Should Reasonably Have Expected Its Acts To Have Consequences in New York.

Broker Genius's arguments hinge mainly on circumstantial evidence suggesting that defendants engineered the loan transaction with Pistol in order to frustrate a potential judgment that Broker Genius might win at trial. This circumstantial evidence includes the fact that: (1) Pistol was created for the sole purpose of lending money to Seat Scouts; (2) the loan was made after the entry of the preliminary injunction and the Court's finding that plaintiff was likely to succeed on its breach of contract claim; and (3) Martin was informed of the litigation pending against defendants before the Promissory Note was executed. However convincing that circumstantial evidence may be as to *defendants'* intent to make certain Broker Genius would not be able to recover a potential future judgment, it is not sufficient to satisfy plaintiff's burden as to what *Pistol* expected or should reasonably have expected when it executed the Note.

Martin's knowledge of the existence of Broker Genius's litigation against Seat Scouts does not suffice to show that Pistol expected or should reasonably have expected the execution of the Note to have consequences in New York. Broker Genius points out that, although Martin claimed during his deposition that Gainor did not advise him of the litigation against Seat Scouts when he was "making the investment," Martin Deposition at 29, an email from Gainor to Martin on October 10, 2018 reveals otherwise. In that email, Gainor attached documents related to the loan and reminded Martin to "make sure you

---

[3] DCL § 273-a provides: "Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment." N.Y. Debt. & Cred. Law § 273-a.

[4] DCL § 276 provides: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors. N.Y. Debt. & Cred. Law § 276.

and your attorneys have reviewed the contents of our investor data portal, especially around our current litigation." Ex. 3 to Munoz Decl. at PISTOL 000264. Broker Genius would have the Court infer that Martin not only familiarized himself with the details of the litigation but also anticipated that a judgment would be entered against Seat Scouts and Seat Scouts' assets would depreciate so dramatically that the $500,0000 obligation would decimate Broker Genius's ability to enforce that future judgment.

This inference, however, would require the Court to make several assumptions, none of which are supported by the record as it currently exists. By all appearances, Gainor's email to Martin is the communication of a potential borrower disclosing a risk to a potential investor. It is equally likely that the inconsistency between Martin's deposition testimony and what is reflected in Gainor's email is indicative of Martin's inattention to the details of the loan transaction.

Broker Genius also points to the inconsistency between Martin's testimony that he did not have legal representation when he was making the loan to Seat Scouts and the fact that Schumeister worked with Martin on the transaction. *See* Martin Deposition at 29–30; Schumeister Decl. ¶¶ 5–8. But Martin's statement is actually consistent with Schumeister's email to Drees disclaiming his role as an attorney and explaining that he would be playing a "ministerial or scrivener role as opposed to what an attorney would normally do in connection with a loan." Ex. 3 to Munoz Decl. at PISTOL 000356; *see* Schumeister Decl. ¶ 8 (Schumeister "advised [Martin] that since the governing law and jurisdiction for disputes was agreed to be Nebraska, neither I nor [my law firm] was in a position to advise as to Nebraska law, and that a Nebraska attorney could be consulted.").

In any event, while it may be prudent to consult a lawyer to advise in financial transactions such as the execution of a promissory note, it is by no means required. It could be the case that, because Martin and Gainor were personal friends, the loan negotiations were not as rigorous as they might have been had the lender and the borrower been strangers. *See, e.g.*, Ex. 2 to Benowich Decl. at 25 (Martin's testimony that he heard about Seat Scouts' product at Gainor's wedding). There is nothing illegal, however, about lending money to a friend.

The cases cited by Broker Genius as examples of courts exercising personal jurisdiction over non-domiciliaries in fraudulent conveyance actions are distinguishable and therefore not persuasive. *Universitas Education, LLC v. Nova Group., Inc.*, No. 11-Cv-1590, 2014 WL 3883371 (S.D.N.Y. Aug. 7, 2014), involved a turnover proceeding in which the court held that it had personal jurisdiction pursuant to CPLR § 302(a)(3) over several non-domiciliary transferee companies (the "Turnover Respondents") that had allegedly received the proceeds of two life insurance policies in fraudulent transfers. But unlike here, the transferor "both controlled the Turnover Respondents and acted as their

7

principal or agent in accomplishing the transfers." *Id.* at *6. Therefore, the court imputed the transferor's knowledge and intent to the Turnover Respondents and found that they should reasonably have expected their actions to create an injury in New York. *Id.*

Similarly, in *Sunrise Industrial Joint Venture v. Ditric Optics, Inc.*, 873 F. Supp. 765 (E.D.N.Y. 1995), the court found it appropriate to exercise personal jurisdiction over a non-domiciliary transferee in a fraudulent conveyance action pursuant to CPLR § 302(a)(3) when the transferee was the parent company of the transferor, a company that defaulted on its lease and allegedly sold off its assets and transferred the proceeds to its parent company to hinder the landlord's ability to obtain payment. In that case, the relationship between the transferee and transferor as parent company and subsidiary was such that it was reasonable to assume that the parent company knew about the subsidiary's financial troubles.

Because Broker Genius's argument that Pistol should reasonably have expected its actions to have consequences in New York is not supported by the evidence before the Court, Broker Genius has failed to "adequately establish that there is at least a reasonable probability of ultimate success upon the question of jurisdiction" as required in a proceeding where the plaintiff seeks preliminary injunctive relief. *Weitzman*, 897 F.2d at 659.[5]

### 2. *The Exercise of Personal Jurisdiction over Pistol Would Not Comport with Federal Due Process Requirements.*

The personal jurisdiction federal due process analysis proceeds in two steps: the "minimum contacts" inquiry and the "reasonableness" inquiry. The minimum contacts inquiry requires the court to consider "whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010). The reasonableness inquiry requires the court to decide "whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Id.* (internal quotations omitted).

The minimum contacts test sets the outer limits of personal jurisdiction permitted by the U.S. Constitution. *Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 174 F. Supp. 2d 170, 173 (S.D.N.Y. 2001). Courts have repeatedly held that, in enacting CPLR § 302, the New York legislature did not codify the minimum contacts analysis, but rather

---

[5] Indeed, the evidence in support of plaintiff's theory of jurisdiction fails to satisfy even the more lenient post-jurisdictional discovery standard requiring "an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." *Dorchester Fin. Sec.*, 722 F.3d at 84.

limited courts to exercising personal jurisdiction in a narrower set of circumstances. *E.g. Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 244 (2d Cir. 2007) ("The reach of New York's long-arm statute . . . does not coincide with the limits of the Due Process Clause."). Therefore, if the exercise of personal jurisdiction is not permitted under CPLR § 302, it certainly falls outside the bounds of what is permitted by the Constitution. As the Court has already determined it cannot exercise personal jurisdiction over Pistol pursuant to CPLR § 302, it need not conduct the due process analysis as well.

### IV. INDISPENSABILITY

#### A. Legal Standard

In circumstances such as these, where a necessary party cannot be joined for want of personal jurisdiction, Rule 19(b) requires courts to consider whether, "in equity and good conscience," the party is one without whom the action between the remaining parties cannot proceed. Fed. R. Civ. P. 19(b). In other words, having determined that Pistol is a necessary party and that Pistol cannot be joined to the action, the Court must now decide whether Pistol is an indispensable party.

Rule 19(b) sets forth four considerations that will ordinarily be among those relevant to the analysis of whether a party is "indispensable." They are as follows: "(1) whether a judgment rendered in a person's absence might prejudice that person or parties to the action, (2) the extent to which any prejudice could be alleviated, (3) whether a judgment in the person's absence would be adequate, and (4) whether the plaintiff would have an adequate remedy if the court dismissed the suit." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 132 (2d Cir. 2013). District courts have "substantial discretion in considering which factors to weigh and how heavily to emphasize certain considerations in deciding whether the action should go forward in the absence of someone needed for a complete adjudication of the dispute." *Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 75 (2d Cir. 1984).

#### B. Because the Rule 19(b) Factors Weigh in Favor of Pistol's Indispensability, the Court Cannot Proceed in Pistol's Absence.

As to the first factor, a judgment in Broker Genius's favor rendered in Pistol's absence would certainly prejudice Pistol by invalidating the Promissory Note, thereby terminating Pistol's rights to Seat Scouts' assets. The consequence would be to leave Pistol without a remedy to recover the $500,000 it loaned to Seat Scouts. In practical effect, such a judgment would also invalidate the default judgment that has been entered in Pistol's favor in the Nebraska foreclosure action. Additionally, the litigation will require the Court to make findings with respect to Pistol's conduct. *See Davidson Well Drilling, Ltd. v. Bristol-Myers Squibb Co.*, No. 09-Cv-1431, 2009 WL 2135396 (S.D.N.Y. July

16, 2009) (finding that a nonparty would be prejudiced when the court would likely make findings with respect to its conduct without its participation).

This prejudice could not be mitigated by assuming that defendants would champion Pistol's interest. *Cf. CP Sols. PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 160 (2d Cir. 2009) (holding that a parent company could "champion" its affiliate's interest where the two were represented by the same counsel and defendants had not alerted the court to any evidence suggesting their interests were adverse). Pistol and defendants have different counsel, and defendants have repeatedly taken the position that they do not wish to defend Pistol's interests. *See* June 19, 2019 Preliminary Injunction Hearing Tr. at 4, 42–43. In addition to these representations, there are myriad reasons why defendants' interests and Pistol's interests may not be aligned; for instance, defendants may at some point decide they do not wish to expend further resources to oppose plaintiff's turnover proceeding, as they have presumably already incurred hundreds of thousands of dollars in legal fees over the course of this lengthy litigation and have represented that their financial resources are dwindling. For these reasons, the Court cannot say that defendants would "champion" Pistol's interest in this proceeding.

The second factor also weighs in favor of dismissing the action, as the road for the Court to be able to craft a judgment in Broker Genius's favor to alleviate prejudice to Pistol is unclear at best. "The proper remedy in a fraudulent conveyance claim is to rescind, or set aside, the allegedly fraudulent transfer and cause the transferee to return the transferred property to the transferor." *Grace v. Bank Leumi Tr. Co. of NY*, 443 F.3d 180, 189 (2d Cir. 2006). Should the Court proceed to the merits and find for Broker Genius, therefore, it must void the Promissory Note, leading to the prejudicial consequences noted above.

As to the third factor, a judgment in Pistol's absence would not be adequate. "Adequacy refers to the public stake in settling disputes by wholes" and avoiding multiple litigation. *Republic of Philippines v. Pimentel*, 553 U.S. 851, 870 (2008). In this instance, the entry of a judgment setting aside the Promissory Note as a fraudulent conveyance would not avoid piecemeal litigation, as Pistol has already won a default judgment on the Note in the Nebraska foreclosure proceeding. The Nebraska court would have to consider how this Court's judgment impacts Pistol's default judgment, and the parties would most likely engage in further litigation over this issue, as they have every issue—and several non-issues—in this litigation.

As to the fourth factor, because Broker Genius has thus far declined to participate in the Nebraska foreclosure action, it may not have an adequate remedy to enforce its judgment in this case, at least as against Seat Scouts, should the Court dismiss the turnover proceeding (assuming, of course, that the parties' representations concerning the greatly diminished value of Seat Scouts' assets are accurate). But Broker Genius has

10

not provided a satisfactory reason as to why it chose not to make its arguments in the Nebraska foreclosure proceeding: by all accounts, it had timely notice of that action and could have intervened. Therefore, the fourth factor is neutral.

Considered together, these factors weigh in favor of dismissal. If the Court were to proceed on the merits and enter a judgment in Broker Genius's favor, the prejudice to Pistol would be too great to justify proceeding in its absence. This result is in accordance with the decisions of several courts that have dismissed cases for failure to join an indispensable party pursuant to Rule 19(b) where the plaintiff sought to have the court adjudicate the rights of non-parties. *E.g. Am. Optical Co. v. Curtiss*, 59 F.R.D. 644, 650 (S.D.N.Y. 1973) ("Actions seeking cancellation of contracts cannot be permitted unless all of the parties to be affected by a decree shall be before the court.") (quoting *Spanner v. Brandt*, 1 F.R.D. 555, 557 (S.D.N.Y. 1941)).[6]

## V. CONCLUSION

Because Broker Genius has failed to set forth sufficient evidence from which the Court can conclude "that there is at least a reasonable probability" that Pistol expected or should reasonably have expected the act of lending Seat Scouts $500,000 to have consequences in New York, the Court is faced with the question of whether Pistol is an indispensable party. Having weighed the Rule 19(b) factors and determined "in equity and good conscience" that the action should not proceed among the existing parties, the Court now grants defendants' motion to dismiss the turnover proceeding for failure to join a necessary party.

Dated: New York, New York
       August 27, 2019

SO ORDERED:

Sidney H. Stein, U.S.D.J.

---

[6] The Court acknowledges that the Second Circuit has held that "a bright-line rule that all parties to a contract are indispensable . . . is inconsistent with Rule 19(b)'s flexible standard." *CP Sols. PTE*, 553 F.3d at 159. However, for the reasons set forth in this Opinion, the Court has determined that the Rule 19(b) factors, considered altogether, require dismissal "in equity and good conscience." Fed. R. Civ. P. 19(b).